**Electronically Filed
Supreme Court
SCWC-14-0000426
03-AUG-2017
07:58 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,
NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR
THE BENEFIT OF THE CERTIFICATE HOLDERS OF THE CWMBS 2006-10
TRUST, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-10,
Respondent/Plaintiff-Appellee,

vs.

R. ONAGA, INC., a Hawai'i corporation,
Respondent/Defendant-Appellant,

and

ROBERT NISPEROS MARQUEZ; MARLYN MIRANDA MARQUEZ; MORTGAGE
ELECTRONIC REGISTRATIONS SYSTEMS, INC., solely as nominee for
CASTLE & COOKE MORTGAGE, LLC, a Hawai'i corporation; DEPARTMENT
OF TAXATION, STATE OF HAWAI'I; UNITED STATES OF AMERICA,
DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE,
Respondents/Defendants-Appellees,

and

LYLE ANTHONY FERRARA and LINDA SUSAN FERRARA,
Petitioners/Intervenors.
(CIVIL NO. 11-1-2095)

R. ONAGA, INC., a Hawai'i corporation,
Respondent/Defendant-Appellant,

vs.

ROBERT NISPEROS MARQUEZ; MARLYN MIRANDA MARQUEZ; BANK OF
NEW YORK MELLON, TRUSTEE; MORTGAGE ELECTRONIC REGISTRATIONS
SYSTEMS, INC.; DEPARTMENT OF TAXATION, STATE OF HAWAI'I;
INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY, U.S.A.,
Respondents/Defendants-Appellees.,

and

LYLE ANTHONY FERRARA and LINDA SUSAN FERRARA,
Petitioners/Intervenors.
(CIVIL NO. 12-1-1758)

SCWC-14-0000426

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000426)

AUGUST 3, 2017

RECKTENWALD, C.J., NAKAYAMA, POLLACK, AND WILSON, JJ., AND
CIRCUIT JUDGE KIM, IN PLACE OF McKENNA, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case requires us to determine whether an appeal of an order confirming sale is moot when the appellant does not post a supersedeas bond to obtain a stay of the proceedings prior to the sale of the property to a bona fide purchaser. We answer this question in the affirmative. In doing so, we adopt the general rule stated by the Intermediate Court of Appeals (ICA) in City Bank v. Saje Ventures II that "the right of a good faith purchaser to receive property acquired at a judicial sale cannot

be affected by the reversal of an order ratifying the sale where a supersedeas bond has not been filed." 7 Haw. App. 130, 133, 748 P.2d 812, 814 (1988) (internal brackets, quotation marks, and citation omitted).

This case arises from the foreclosure sale of a house (the Property) once owned by Robert Nisperos Marquez and Marlyn Miranda Marquez (the Marquezes). R. Onaga, Inc. (Onaga) and The Bank of New York Mellon FKA the Bank of New York (BONY) each initiated foreclosure proceedings against the Marquezes. Both claimed to have a first priority lien and requested foreclosure and sale of the Property. The Circuit Court of the First Circuit (circuit court) granted summary judgment in favor of BONY, finding that BONY had a first priority lien.[1] Onaga then filed a motion to stay BONY's foreclosure proceeding, and the circuit court ordered Onaga to post a supersedeas bond in order to stay the proceedings. Onaga did not post a bond. Meanwhile, petitioners Lyle Anthony Ferrara and Linda Susan Ferrara (the Ferraras) were the highest bidder at the foreclosure sale, and the court issued judgment confirming the sale.

Onaga initiated two separate appeals to the ICA: the first challenged the court's grant of summary judgment in favor of BONY; the second, this appeal, challenged the order confirming

_____

[1] The Honorable Edwin C. Nacino presided.

the foreclosure sale.  The ICA filed a summary disposition order in the first appeal, vacating the circuit court's grant of summary judgment.

The Ferraras intervened in this appeal and moved to dismiss.  They argued that this appeal was moot because the sale of the Property cannot be undone, even if the ICA were to vacate the order confirming foreclosure.  The ICA denied the Ferraras' motion, noting that Hawai'i Revised Statutes (HRS) § 501-118 (Supp. 1998) provides, "In case of foreclosure by action, a certified copy of the final judgment of the court confirming the sale may be filed or recorded . . . after the time for appealing therefrom has expired and the purchaser shall thereupon be entitled to the entry of a new certificate."  (Emphasis added.) Thus, the ICA reasoned that Onaga's appeal was not moot because it was pending at the time the certificate of title was issued to the Ferraras.  Accordingly, the ICA vacated the circuit court's judgment confirming the sale.

The Ferraras' application presents the following question:  "Whether the ICA gravely erred when it denied the Petitioners' motions to dismiss the appeal on mootness grounds."

The application of HRS § 501-118 in judicial foreclosures is a question of first impression before this court. Under Hawai'i Rules of Civil Procedure (HRCP) Rule 62(d), an

4

appellant may obtain a stay by posting a supersedeas bond, and Hawaiʻi case law establishes that a certificate of title has conclusive effect on the question of title to land.  Because Onaga failed to post a supersedeas bond as required by the circuit court, its appeal of the foreclosure proceeding is moot in light of the Ferraras' certificate of title.  In reaching that conclusion, we reject the ICA's interpretation of HRS § 501-118 as providing that a bona fide purchaser must wait until an appeal is resolved before it can obtain a certificate of title.

We therefore reverse the ICA's July 20, 2016 judgment on appeal, and affirm the circuit court's February 21, 2014 judgment confirming the sale of the Property to the Ferraras.

## I.  Background

### A.  Circuit Court Proceedings

BONY filed a complaint for mortgage foreclosure in circuit court on September 13, 2011, naming, among others, the Marquezes and Onaga as defendants.  BONY attached (1) a promissory note in the amount of $720,400 and (2) a mortgage on the Property recorded in Land Court on February 21, 2006; both documents were executed by the Marquezes.  BONY asserted that it was assigned the mortgage and note pursuant to an assignment of mortgage recorded in Office of the Assistant Registrar of the Land Court (Land Court) on March 31, 2011.  BONY stated that it

5

was entitled to foreclose because the Marquezes had failed to make their scheduled payments.

In May 2012, Onaga filed a "Motion to Dismiss and/or Motion for Summary Judgment" against BONY. Onaga alleged that the note attached to BONY's complaint showed that the last entity to hold the note was Countrywide Home Loans, Inc., and nothing indicated that Countrywide had transferred its interest in the note to BONY. Thus, Onaga argued that BONY had not demonstrated that it was the current note holder and therefore could not enforce the Marquezes' note through a mortgage foreclosure.

BONY opposed Onaga's motion, arguing that "the Note was made payable to a bearer and [BONY] is in possession of the Note." BONY asserted that its possession of the note and the assignment of mortgage was sufficient to establish that it is entitled to foreclose on the mortgage, citing Ocwen Federal Bank, FSB v. Russell, 99 Hawaiʻi 173, 184, 53 P.3d 312, 323 (2002).

Onaga subsequently filed a complaint for mortgage foreclosure in circuit court (Civil No. 12-1758-12). Onaga alleged that the Marquezes "purchased the assets" of Onaga, and executed and delivered a $75,000 promissory note to Onaga on December 1, 2003. Onaga also stated, "On November 26, 2003, [the Marquezes and Onaga] executed a Real Estate Mortgage and Financing Statement which was secured on a condominium, then

6

owned by [the Marquezes] as additional protection for payment of the asset purchase agreement and promissory note."

According to the complaint, Onaga agreed to release the mortgage on the condominium so that the Marquezes could sell the condominium and use the sale proceeds to purchase the Property. In exchange, the Marquezes agreed to "substitute the mortgage from the condominium to the Property," but later "reneged on their promise." The complaint explained that Onaga sued the Marquezes for specific performance, and the circuit court entered final judgment in favor of Onaga in December 2007. The complaint then stated that Onaga and the Marquezes executed a mortgage "to secure the asset purchase agreement and promissory note entered earlier in 2003." Onaga stated that both the final judgment and the mortgage were recorded in the Land Court in March 2008. Onaga alleged that the Marquezes failed to make the payments required under the asset purchase agreement and therefore Onaga was entitled to foreclose on the Property.

The BONY and Onaga foreclosure actions were consolidated in November 2012.

BONY filed a "Motion for Summary Judgment for Foreclosure Against All Defendants and for Interlocutory Decree of Foreclosure." BONY noted that it was required to prove the following facts to be entitled to summary judgement: (1) the

7

existence of an agreement between the parties; (2) the terms of the agreement; (3) default under the agreement; and (4) notice. See Bank of Honolulu v. Anderson, 3 Haw. App. 545, 551, 654 P.2d 1371, 1375 (1982)  BONY attached (1) a "Declaration of Indebtedness" by BONY's servicing agent for the loan, (2) the February 15, 2006 note and mortgage, (3) the March 31, 2011 assignment of mortgage, (4) documents related to the Marquezes' loan default, and (5) a declaration by BONY's counsel.  BONY argued that these exhibits satisfied the Bank of Honolulu requirements.

Onaga filed a cross motion for summary judgment and for decree of foreclosure.  Onaga argued that it had a first priority lien on the Property and that BONY had no interest in the note. The circuit court denied Onaga's cross motion.

On July 5, 2013, the circuit court filed its findings of fact (FOFs), conclusions of law (COLs), and order granting BONY's motion for summary judgment for foreclosure against all defendants and for an interlocutory decree of foreclosure.  The court determined that BONY was the owner of the note and mortgage based on the March 31, 2011 assignment of mortgage.  Thus, because the Marquezes defaulted on their loan, the court determined that BONY was entitled to foreclose on the Property. With respect to Onaga, the court found that it "may claim an

interest in the Property," but that "[i]ts interest in the Property, if any, is junior to [BONY's] lien." The court concluded that there was no genuine issue of material fact and granted summary judgment in favor of BONY and an interlocutory decree of foreclosure. The court filed its judgment on July 5, 2013.

On July 24, 2013, Onaga filed its first notice of appeal (CAAP-13-2287), challenging the circuit court's order granting BONY's motion for summary judgment and denying Onaga's motion for summary judgment.

On August 8, 2013, the court filed amended FOFs, COLs, and order appointing a commissioner. The court filed its amended judgment on September 6, 2013.[2]

On October 29, 2013, Onaga filed a "Motion for an Order to Stay Proceedings Without Conditions or Bond." Onaga argued that its pending appeal "will decide which mortgagee, [BONY] or R. Onaga has standing and priority in this consolidated judicial mortgage foreclosure action." (Emphases in original.) Onaga requested a stay of the proceedings, since "proceeds out of the foreclosure sale enforcing the court's judgment are to be paid to

---

[2] On October 10, 2013, Onaga filed a "Motion for an Order to Void Amended Judgment Filed on September 6, 2013 and the Amended Notice of Entry of Judgment Filed September 26, 2013." The motion attached a declaration of Onaga's counsel that argued that the September 6, 2013 judgment should be voided because it violated HRCP Rule 59(e) and was entered without notice to Onaga. The circuit court denied Onaga's motion.

mortgage lien creditors according to their priority."

The commissioner conducted a public auction on November 5, 2013, where the Ferraras were the high bidders. BONY filed a "Motion for Order Confirming Foreclosure Sale, Approving Commissioner's Report, Allowance of Commissioner's Fees, Attorney's Fees, Costs, and Directing Conveyance."

On January 17, 2014, the court granted BONY's motion, approving sale of the Property to the Ferraras.

On February 10, 2014, Onaga filed its second notice of appeal (CAAP-14-426)--the instant appeal--challenging the circuit court's order confirming the foreclosure sale and the order denying Onaga's motion to void the amended judgment.

On February 12, 2014, the court denied Onaga's October 29, 2013 motion to stay the proceedings pending appeal, but stated that "Defendant shall post a supersedeas bond in order to obtain a Stay on the proceedings."[3] Onaga did not post a supersedeas bond. The court filed its final judgment on February 21, 2014.

**B.    ICA Proceedings**

In the instant appeal, Onaga argued that the circuit court erred in three ways:

---

[3]    A supersedeas bond is a bond that "suspends a judgment creditor's power to levy execution, [usually] pending appeal." Black's Law Dictionary 1667 (10th ed. 2014).

A.  The circuit court erred in concluding that it has subject matter jurisdiction in the [BONY's] judicial mortgage foreclosure action based on the Assignment of Mortgage registered in Land Court on March 31, 2011.

B.  The circuit court erred in granting [BONY's] motion for confirming foreclosure sale pursuant to finding it has priority among all mortgagees therein.

C.  The circuit court erred in denying R. Onaga's motion for stay of proceedings without conditions or bond pending appeal because the consolidated civil cases were between two mortgagees and no money judgments among them were involved.

On September 12, 2014, Onaga moved in the ICA for the order confirming the foreclosure sale to be stayed during the pendency of this appeal.  Specifically, it asked the ICA to "enjoin all parties involved in the appeals, including the buyers and assistant registrars of the Land Court, from engaging in any action dealing with the subject Property or doing anything with the subject Property that will alter in any way, the subject Property title registration pending the resolution of both appeals."

On September 18, 2014, the ICA filed a summary disposition order in CAAP-13-2287.  The ICA held that BONY's "Declaration of Indebtedness" attached to its motion for summary judgment did not comply with HRCP Rule 56(e).[4]  Thus, the ICA

_____

[4]    HRCP 56(e) provides, in relevant part:

(e) Form of Affidavits; Further Testimony; Defense Required.  Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify

(continued...)

11

vacated the circuit court's order granting BONY's motion for summary judgment, and remanded for further proceedings.

On September 19, 2014 the ICA granted Onaga's September 12, 2014 motion to stay the circuit court's order confirming the foreclosure sale and directing conveyance, "[g]iven the vacation of summary judgment in favor of [Onaga.]"

On September 28, 2014, the Ferraras filed a motion to intervene in the instant appeal. The next day, they filed a motion to dismiss the appeal. The Ferraras acknowledged that the ICA in CAAP-13-2287 vacated the order granting BONY's motion for summary judgment. However, the Ferraras noted that Onaga "failed to obtain a stay pending appeal and failed to post a supersedeas bond pending appeal."

The ICA granted the Ferraras' motion to intervene, but denied the Ferraras' motion to dismiss. The ICA permitted the Ferraras to intervene for the limited purpose of "addressing whether the appeal is moot." With respect to the motion to dismiss, the ICA cited HRS § 501-82[5] and stated that "the

_____

[4](...continued)
to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

[5]    The ICA's order states:

[HRS] § 501-82 (2014 Supp.) provides, in pertinent part:

(continued...)

12

Ferraras do not assert that a Certificate of Title has been issued, and even if a Certificate of Title was issued, the Ferraras would need to establish that there is no encumbrance noted on such Certificate of Title related to Appellant Onaga's mortgage or his claims on the [P]roperty." Thus, the ICA concluded that the Ferraras did not establish that the appeal was moot.

The Ferraras filed a second motion to dismiss on August 4, 2015, attaching (1) a certificate of title issued on August 29, 2014, (2) the August 29, 2014 Commissioner's Deed, and (3) a mortgage executed by the Ferraras and recorded in Land Court on August 29, 2014. The Ferraras argued that those documents "should resolve all of [t]he issues" raised by the ICA's order denying the first motion to dismiss.

Onaga filed a memorandum in opposition, arguing that the certificate of title attached to the Ferraras' motion was

---

[5](...continued)

> (a) Every applicant receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, hold the same free from all encumbrances except those noted on the certificate in the order of priority of recordation, and any of the following encumbrances which may be subsisting[.]

(Emphasis in ICA order.)

13

void.  Onaga alleged that, under HRS § 501-118,[6] a certificate of title cannot be filed while the final judgment confirming the sale is pending on appeal.  Onaga argued that the Ferraras "are obligated to follow the clear language and procedure outlined in law to obtain a new certificate of title of land registered in Land Court after a judicial mortgage foreclosure action has run its course in the appeal process."  Onaga also argued that the Land Court lacked jurisdiction to issue the August 29, 2014 certificate of title because the notice of appeal was filed on February 10, 2014.

In a memorandum opinion, the ICA held that Onaga's appeal is not moot.  Bank of New York Mellon v. R. Onaga, Inc., CAAP-14-0000426 (App. June 6, 2016) (mem.).  The ICA took judicial notice of the documents attached to the Ferraras'

---

[6]     HRS § 501-118 (Foreclosure) (2006) provides, in relevant part:

> In case of foreclosure by action, a certified copy of the final judgment of the court confirming the sale may be filed or recorded with the assistant registrar or the deputy after the time for appealing therefrom has expired and the purchaser shall thereupon be entitled to the entry of a new certificate.
>
> . . . . Nothing in this chapter shall be construed to prevent the mortgagor or other person in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title.
>
> After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land.

14

motion.  Id. at 9.  It then distinguished this case from City
Bank because City Bank "did not involve property registered in
Land Court."  Id. at 11.  The ICA cited HRS § 501-88[7] and stated
that "we must consider that a certificate of title is given
conclusive effect to all matters stated in the certificate,
except as otherwise provided in HRS Chapter 501."  Id. (emphasis
in original).

The ICA noted that HRS § 501-118 expressly provides,
"[i]n case of foreclosure by action, a certified copy of the
final judgment of the court confirming the sale may be filed or
recorded . . . after the time for appealing therefrom has expired
and the purchase shall thereupon be entitled to the entry of a
new certificate."  Id.  Thus, the ICA determined that "it is
questionable whether the certificate of title submitted by the
Ferraras is conclusive in passing title to the Ferraras," since
Onaga "is permitted the opportunity to appeal the foreclosure by
action."  Id. at 11-12.  The ICA further noted that the Ferraras
contended that they obtained a certificate of title pursuant to
HRS § 501-106(a)(1), but that "it is questionable whether

---

[7]    HRS § 501-88 (Certificate as evidence) (2006) provides:

The original certificate in the registration book, and
any copy thereof duly certified under the signature of
the registrar or assistant registrar, and the seal of
the court, shall be received as evidence in all the
courts of the State and shall be conclusive as to all
matters contained therein, except as otherwise
provided in this chapter.

15

subsection (1) governs in the case of a judicial foreclosure in which case title does not pass by voluntary means."[8]  Id. at 12. Thus, the ICA concluded that the Ferraras "have not carried their burden" to establish that the appeal is moot.  Id.

Regarding the merits of the appeal, the ICA held that, because the foreclosure judgment was vacated in CAAP-13-2297, the judgment confirming sale must also be vacated.  Id. at 12-13. The ICA also held that the circuit court did not err in denying Onaga's motion for stay of proceedings because Onaga was required to a post a supersedeas bond pursuant to HRCP Rule 62(d)[9] to obtain the stay, and it did not do so.  Id. at 12-14.

## C.    Application for Writ of Certiorari

In the application for writ of certiorari, the Ferraras argue that "[t]he general rule is that the right of a good faith purchaser 'to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a [supersedeas] bond has not been filed.'"  Further, they assert

_____

[8]    The Ferraras did not mention HRS § 501-106 in their second motion to dismiss, so it is unclear what the ICA was referring to.

[9]    HRCP Rule 62(d) provides:

(d) Stay Upon Appeal.  When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule.  The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be.  The stay is effective when the supersedeas bond is approved by the court.

16

that "[t]he sale of a subject property to a good faith purchaser during the pendency of an appeal renders a challenge to the confirmation of a foreclosure sale moot as it prevents the appellate court from granting any effective relief."  (Citing Lathrop v. Sakatani, 111 Hawaiʻi 307, 314-15, 141 P.3d 480, 487-88 (2006)).  The Ferraras argue that title of the Property passed to them through the filing of the August 29, 2014 Commissioner's Deed.

The Ferraras also note that they attached a certificate of title to their second motion to dismiss in direct response to the reasoning in the ICA's order denying their first motion to dismiss.  The Ferraras assert that the ICA nonetheless denied their second motion to dismiss and disregarded Onaga's failure to post a supersedeas bond.

The Ferraras argue that the ICA misinterpreted HRS § 501-118 and that a recording of a judgment is not required under HRS § 501-155[10] to transfer title.  Rather "the filing of

---

[10]    HRS § 501-155 (Judgment directing conveyance) (2006) provides:

> Any judgment of a court of competent jurisdiction, whether a federal court or a court of the State of Hawaii, affecting title or rights in registered land, may be recorded, whether the claim adjudicated was legal or equitable in nature.  Every instrument necessary to give effect to the judgment and directed by the court to be executed, whether executed by a party or by some other person appointed by the court, shall be recorded and shall have full force and effect to bind the land to be affected thereby.  A judgment entered in lieu of directing a conveyance, and having

(continued...)

17

the Commissioner's Deed gives effect to the judgment and when recorded, as it had been, shall have the full force and effect to bind the land to be affected thereby."

Lastly, the Ferraras argue that the ICA's opinion is inconsistent with its decisions in City Bank, Cent. Pacific Bank v. Aikona Maui Props., CAAP-12-0001032, 2015 WL 6231719 (App. Nov. 29, 2013) (order), and DB Private Wealth Mortg., Ltd. v. Bouley, CAAP-14-0000585, 2016 WL 3548347 (App. June 28, 2016) (SDO).

In response, Onaga argues that the certificate of title is void because "Petitioners' filing of the commissioner's deed and obtaining a new certificate for the Property did not comply with HRS § 501-118." It contends that the ICA's interpretation of HRS § 501-118 was consistent with Aames Funding Corp. v. Mores, 107 Hawaiʻi 95, 101, 110 P.3d 1042, 1048 (2005), because "[t]he Supreme Court in Aames and the ICA in this appeal are ascertaining and giving effect to the intention of the legislature of giving mortgagors, owners of Land Court property, the right to appeal in HRS § 501-118."

---

[10](...continued)
          the effect of a conveyance, shall be recorded with
          like force and effect.

## II.   Standards of Review

### A.   Mootness

"Appellate courts review issues of mootness de novo."

State v. Tui, 138 Hawaiʻi 462, 466, 382 P.3d 274, 278 (2016).

### B.   Statutory Interpretation

> Statutory interpretation is reviewed *de novo* by [the appellate] court.  When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Moreover, it is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning.

Bhakta v. Cnty. of Maui, 109 Hawaiʻi 198, 208, 124 P.3d 943, 953 (2005) (internal quotation marks, citations, and brackets in original omitted).

## III.   Discussion

The only issue presented in the Ferraras' application is whether the ICA erred in determining that the appeal was not moot.  Specifically, we must determine whether, in judicial foreclosures involving Land Court property, an appeal of an order confirming sale is moot when the appellant does not obtain a stay of the proceedings prior to the sale of the property to a bona fide purchaser and the issuance of a new certificate of title.

With regard to mootness, this court has stated:

> [A] case is moot where the question to be determined is abstract and does not rest on existing facts or

19

> rights. Thus, the mootness doctrine is properly
> invoked where events have so affected the relations
> between the parties that the two conditions of
> justiciability relevant on appeal—adverse interest
> and effective remedy—have been compromised.

Okada Trucking Co. v. Bd. of Water Supply, 99 Hawai'i 191, 195-96, 53 P.3d 799, 803-04 (2002) (internal brackets, quotation marks, ellipses, and citation omitted). In other words, "[a] case is moot if the reviewing court can no longer grant effective relief." Kaho'ohanohano v. State, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (2007) (quoting City Bank, 7 Haw. App. at 134, 748 P.2d at 815).

HRCP Rule 62, titled "Stay of Proceedings to Enforce a Judgment," states in relevant part:

> (d) Stay Upon Appeal. When an appeal is taken the
> appellant by giving a supersedeas bond may obtain a
> stay subject to the exceptions contained in
> subdivision (a) of this rule. The bond may be given
> at or after the time of filing the notice of appeal or
> of procuring the order allowing the appeal, as the
> case may be. The stay is effective when the
> supersedeas bond is approved by the court.

Here, Onaga appealed the circuit court's grant of summary judgment in favor of BONY, and later filed a "Motion for an Order to Stay Proceedings Without Conditions or Bond." Consistent with HRCP Rule 62(d), the circuit court denied Onaga's motion, stating, "[Onaga] shall post a supersedeas bond in order to obtain a Stay on the proceedings." The ICA agreed, concluding that the circuit court did not err in denying Onaga's motion for stay of proceedings because Onaga failed to comply with HRCP Rule

20

62(d).  Thus, the foreclosure proceedings continued:  the Ferraras purchased the Property at the foreclosure sale, the Commissioner's Deed was recorded, and a new certificate of title was issued for the Property.

## A.  Onaga was Required to Post a Supersedeas Bond in Order to Obtain a Stay

HRCP Rule 62(d) provides that an appellant may obtain a stay of proceedings "by giving a supersedeas bond."[11]  Onaga never posted a bond.  Accordingly, the circuit court did not err in allowing the foreclosure sale to proceed or issuing its order confirming the sale and directing conveyance of the Property to the Ferraras.

The ICA's opinion in City Bank is instructive on this point.  In City Bank, the bank filed a complaint to foreclose on the defendant's mortgage, and the circuit court granted summary judgment in favor of the bank and a junior mortgagee.  7 Haw. App. at 132, 748 P.2d at 814.  The property was sold to the highest bidder, and the circuit court entered an order confirming the sale and directing distribution of the proceeds.  Id.  The defendants timely appealed the order confirming sale.  Id. at

---

[11]  HRCP Rule 62 also gives courts broad discretion to stay execution of a judgment pending a motion for a new trial or for alteration of a judgment.  See HRCP Rule 62(b).  Additionally, HRCP Rule 62(c) provides that, in an appeal taken from a judgment relating to an injunction, "the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

21

133, 748 P.2d at 814.

The ICA stated, "[t]he general rule is that the right of a good faith purchaser 'to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a [supersedeas] bond has not been filed."  Id. (quoting Leisure Campground & Country Club Ltd. P'ship v. Leisure Estates, 372 A.2d 595, 598 (Md. 1977)).  The ICA explained that the purpose of the rule is to advance "the stability and productiveness of judicial sales."  Id. (quoting 47 Am. Jur. 2d Judicial Sales § 55 (1969)[12]).  It noted that the exceptions to this rule are when the reversal is based on jurisdictional grounds or when the purchaser is the mortgagee, explaining that the mortgagee in that case "does not free himself from the underlying dispute to which he is a party."  See id. (quoting Leisure Campground, 372 A.2d at 598) (brackets omitted).

The ICA then noted that the purchaser of the property

---

[12]     The current version of this section is 46 Am. Jur. 2d. Judicial Sales § 20 (2016), which states:

> The reversal of a decree directing a judicial sale, on account of an error or irregularities not going to the jurisdiction, does not vitiate the title of one who, as a stranger to the proceeding, has in good faith purchased property at the sale, either before an appeal or writ of error or pending the same without supersedeas.  This principle advances the stability and productiveness of judicial sales and the value of titles derived under them and operates as well in the interests of the owners of the property sold as for the protection of purchasers. . . .

22

was a third party, good faith purchaser,[13] and that "[t]here was no stay of the execution of the confirmation order and the sale of the Property has been closed."  See id. at 133, 748 P.2d at 814-15.  Thus, the ICA concluded that "the appeal is moot and subject to dismissal."  Id. at 134, 748 P.2d at 815.

City Bank comports with this court's analysis in Lathrop v. Sakatani, which addressed the issue of whether the circuit court erred in expunging a lis pendens (i.e., a notice of an action pending against real property).  We held that the appeal was moot because the property had been sold.  111 Hawai'i at 313-15, 141 P.3d at 486-88.  We stated that "it is appellant's burden to seek a stay if post-appeal transactions could render the appeal moot."  Id. at 313, 141 P.3d at 486 (quoting In re Gotcha Int'l L.P., 311 B.R. 250, 255 (B.A.P. 9th Cir. 2004)).  We then dismissed the appeal, reasoning that "the plaintiffs failed to seek a stay on the execution of the circuit court's order expunging the lis pendens pending the disposition of the appeal" and that "[s]uch failure permitted the defendants to proceed with

---

[13]    An "innocent" or good faith purchaser is "one who, by an honest contract or agreement, purchases property or acquires an interest therein, without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller."  Ka'u Agribusiness Co. v. Heirs or Assigns of Ahulau, 105 Hawai'i 182, 193, 95 P.3d 613, 624 (2004) (citation omitted).  When the Ferraras purchased the Property, the circuit court had already determined in the consolidated proceedings that BONY had a first priority lien on the Property.  Thus, at the time of the purchase, there would not have been an "infirmity in the title" based on Onaga's mortgage.

23

the sale transaction."  Id. at 314, 141 P.3d at 487.

Moreover, the City Bank rule makes practical sense in the foreclosure context and is consistent with the principles underlying the Land Court system mentioned above.  "The policy underlying this rule is to encourage nonparty individuals to bid at [foreclosure] sales."  Leisure Campground, 372 A.2d at 223. The appeals process can last several years--for example, this appeal was filed in February 2014.  If a party challenging a foreclosure is not required to post a bond to stay the proceedings pending the outcome of the appeal (or excused by the court from doing so), third parties would be dissuaded from purchasing a foreclosed property given the long-term uncertainty on the investment.

This court has never explicitly adopted the rule described in City Bank.  In accordance with Hawaiʻi precedent and the policy considerations underlying the Land Court system, we hereby adopt City Bank's rule for application to Land Court properties as well as properties administered pursuant to HRS Chapter 502 (Regular System).[14]  Thus, we hold that an appellant

_____

[14]     In this case, the ICA distinguished City Bank by stating that "City Bank did not involve property registered in Land Court."  Bank of New York, mem. op. at 11.  However, it is unclear whether the property in City Bank was registered in Land Court, and later unpublished ICA decisions have applied City Bank to Land Court properties.  See Cent. Pacific Bank, CAAP-12-0001032 at *1; Bouley, CAAP-14-0000575 at *2; In re Marn Family Litigation, CAAP-12-0000574 at *2.

challenging a foreclosure must post a supersedeas bond or otherwise obtain a stay pursuant to HRCP Rule 62 or Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 8.[15]  We further hold that the appellant here, who has failed to obtain a stay by posting a bond, may not attack a good-faith purchaser's title to property purchased at a judicial sale and confirmed by court order.[16]

Thus, it was Onaga's burden to post a bond and thereby obtain a stay if Onaga believed that it, and not BONY, was entitled to foreclose on the Property.  It failed to do so.  The circuit court properly allowed the foreclosure proceedings to continue, a sale was held, and the Ferraras purchased the Property in good faith.

## B. Onaga's Appeal is Moot, as the Certificate of Title Conclusively Establishes the Ferraras' Title to the Property

In Aames, this court held that "conclusive effect is to be given the certificate of title on the question of title to land."  107 Hawaiʻi at 101, 110 P.3d at 1048.  Notably, Aames

---

[15]     Our holding does not affect a court's discretion to grant a stay without requiring a bond.  See, e.g., Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 757-58 (D.C. Cir. 1980); 2A Barbara J. Van Arsdale et. al., Federal Procedure, Lawyers Edition § 3:653 (June 2017 Update) (discussing cases).

[16]     Following City Bank, our holding does not extends to cases in which the underlying order ratifying the sale has been reversed on jurisdictional grounds, or when the purchaser of the property is the mortgagee.  See City Bank, 7 Haw. App. at 133, 748 P.2d at 814.  Nor does it apply to cases in which a court has granted a party's motion for relief from judgment or order pursuant to HRCP Rule 60(b).

addressed the provision of HRS § 501-118 dealing with foreclosure by power of sale, not foreclosure by action; thus it could be argued that the Aames holding only applies to nonjudicial foreclosure proceedings. See id. at 101, 110 P.3d at 1048. However, Aames discussed the legislative history of HRS Chapter 501 and the Land Court system generally, stating:

> HRS chapter 501 pertains to "registration of title [with the Land Court] to land and easements or rights in land held and possessed in fee simple within the state of Hawai'i." HRS § 501–1 (1993). The 1903 legislative history of HRS chapter 501 is sparse. However, the legislature indicated that Act 56, which established the statute, incorporated what is commonly known as the "Torrens Land Act." S. Com. Rep., in 1903 Senate Journal, at 337.
>
> According to the legislative history, . . . [i]t provides an economical and convenient manner of recording land titles, which, when the plan is fully adopted by the people, will do away with the present cumbersome plan of records and largely reduce the expense of land transfers. . . .
>
> The system of land title registration adopted by the Torrens Land Act and codified in HRS chapter 501 is a system for registration of land under which, upon the landowner's application, the court may, after appropriate proceedings, direct the issuance of a certificate of title. The purpose of this registration system is to conclusively establish title to land through the issuance of a certificate of title.

Id. (internal quotation marks, ellipses, and citations omitted; emphasis added).

In order words, by relying on certificates of title, the Torrens system is intended to promote "certainty, economy, simplicity, and facility." 11 Thompson on Real Property, § 92.10(a) (David A. Thomas ed., 3rd ed. 2015). Giving

26

certificates of title conclusive effect in the judicial foreclosure context, as well as in the non-judicial foreclosure context, furthers these purposes.

Furthermore, it is unclear what relief Onaga can obtain in this appeal, which challenges the order confirming sale. In its opening brief, Onaga requested that the ICA (1) "reverse the order granting summary judgment and decree of foreclosure and final judgment to [BONY] and remand for entry of dismissal of its action" and (2) "reverse the order denying R. Onaga's cross-motion for summary judgment and remand ordering the circuit court to enter an order granting summary judgment and decree of foreclosure in favor of R. Onaga and to proceed with the foreclosure sale." Alternatively, Onaga requested that the ICA "enter summary judgment and interlocutory decree of foreclosure in favor of R. Onaga before sending the matter back to circuit court for it to proceed with the foreclosure sale." Thus, Onaga appears to request a decision on the merits of the foreclosure decree, as well as new foreclosure proceedings.

However, this court has explained that "a judgment of foreclosure finally determines the merits of the controversy," and "[s]ubsequent proceedings are simply incidents to its enforcement." Mortg. Electr. Registration Sys., Inc. v. Wise, 130 Hawai'i 11, 16, 304 P.3d 1192, 1197 (2013) (internal

27

quotation marks and citations omitted).  An appellant cannot challenge the merits of a foreclosure decree in an appeal of an order confirming sale.  See id. ("[O]rders confirming sale are separately appealable from the decree of foreclosure[.]")

Moreover, title to the Property has already passed to the Ferraras.  See HRS § 501-118 ("After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land.").  Allowing Onaga to undo or otherwise hinder the sale of the Property to the Ferraras would be inconsistent with the purposes underlying our Land Court system.  See HRS § 501-88 ("The original certificate in the registration book, and any copy thereof duly certified[,] . . . shall be conclusive as to all matters contained therein, except as otherwise provided in this chapter).

Thus, because Onaga did not post a bond to stay the proceedings pending appeal, the instant appeal is moot under HRCP Rule 62(d) and Aames.

## C.  HRS § 501-118 Does Not Prevent the Ferraras from Taking Title to the Property

In denying the Ferraras' second motion to dismiss, the ICA determined that "it is questionable whether the certificate of title submitted by the Ferraras is conclusive in passing title to the Ferraras," because under HRS § 501-118, Onaga "is

28

permitted the opportunity to appeal the foreclosure by action."

Bank of New York, mem. op. at 11-12.  The ICA also held that the

Ferraras did not comply with HRS § 501-118 because they "do not

contend that they filed a certified copy of the Judgment

Confirming Sale, instead claiming that title was vested in them

upon the recording of the Commissioner's Deed."  Id. at 12.

Thus, the ICA held that a certificate of title must also comply

with HRS § 501-118, thereby placing two requirements for good-

faith purchasers such as the Ferraras to prove mootness:  (1) any

appeal regarding a foreclosure by action must be complete, and

(2) the purchaser must file a certified copy of the judgment

confirming sale.  See id. at 11-12.

This court has not previously interpreted the provision

of HRS 501-118 at issue here.  The first paragraph of HRS §

501-118 provides:

> In case of foreclosure by action, a certified copy of
> the final judgment of the court confirming the sale
> may be filed or recorded with the assistant registrar
> or the deputy after the time for appealing therefrom
> has expired and the purchaser shall thereupon be
> entitled to the entry of a new certificate.

The ICA appears to have interpreted "after the time for

appealing therefrom has expired" as meaning the completion of the

appeal.  However, by its plain language "the time for appealing

therefrom" clearly refers to the window within which a party may

file a notice of appeal after the entry of a judgment, i.e.,

29

thirty days (subject to extension). See HRAP Rule 4(a)(1), (4).

Moreover, the ICA's interpretation appears inconsistent with HRCP Rule 62(d), discussed above, which provides that a party may obtain a stay as of right by posting a supersedeas bond--if an appeal of a foreclosure automatically prevents the purchaser from taking title, a bond would never be necessary. Furthermore, this interpretation places an undue burden on third parties such as the Ferraras, as they must monitor an appeal to which they are not parties and/or intervene in the appeal, wait until the appeal has been completely disposed of, and then finally obtain a certified copy of the final judgment.

The ICA's interpretation of HRS § 501-118 also appears inconsistent with HRS § 501-155. The ICA stated that the Ferraras' certificate of title was "contrary to the express provisions of HRS § 501-118" because "[t]he Ferraras do not contend that they filed a certified copy of the Judgment Confirming Sale, instead claiming that title was vested in them upon recording of the Commissioners' Deed." Bank of New York, mem. op. at 12. However, HRS § 501-155 provides that a judgment directing conveyance "may be recorded" in Land Court, but that "[e]very instrument necessary to give effect to the judgment and directed by the court to be executed . . . shall be recorded and shall have full force and effect to bind the land to be affected

30

thereby." (Emphases added.) The Ferraras recorded the Commissioner's Deed conveying the Property in Land Court, as directed by the circuit court's order confirming sale, and then obtained a certificate of title. This was sufficient to demonstrate that title of the Property conclusively transferred to the Ferraras.[17] See Aames, 107 Hawaiʻi at 101, 110 P.3d at 1048 ("[C]onclusive effect is to be given the certificate of title on the question of title to land.").

In sum, we interpret HRS § 501-118 as providing a nonexclusive means for a purchaser of a property at a foreclosure sale to obtain a certificate of title, i.e., by filing a certified copy of the final judgment after the thirty day period allowed to file a notice of appeal has elapsed. HRS § 501-118 does not preclude good faith purchasers at a foreclosure sale from obtaining a certificate of title by other statutory procedures, such as those provided in HRS § 501-155. Accordingly, HRS § 501-118 does not prevent the Ferraras from taking title to the Property.

---

[17] The ICA also noted that the Ferraras may not have been entitled to a certificate of title under HRS § 501-106(a)(1) because "it is questionable whether subsection (1) governs in the case of a judicial foreclosure in which case title does not pass by voluntary means." Bank of New York, mem. op. at 12 (citing HRS § 501-106(a)(1), which provides that "[n]o new certificate of title shall be entered . . . except . . . [i]n pursuance of any deed or other voluntary instrument"). The ICA's interpretation is incorrect, as it would mean that no purchaser of a foreclosed property would be entitled to a certificate of title, regardless of whether the foreclosure was judicial or non-judicial, because foreclosures are never "voluntary" under the ICA's meaning of the word.

31

## IV.  Conclusion

A party who wishes to stay an order confirming a foreclosure sale pending appeal must post a supersedeas bond or otherwise obtain a stay pursuant to HRCP Rule 62 or HRAP Rule 8. If a stay is not obtained and the property is sold to a bona fide purchaser, the appeal should be dismissed as moot because no effective relief can be granted.  In the instant case, Onaga failed to post a supersedeas bond or otherwise obtain a stay, and the Ferraras lawfully purchased the Property in good faith. Accordingly, ICA erred in concluding that Onaga's appeal was not moot.

The ICA's July 20, 2016 judgment on appeal is reversed, and the circuit court's February 21, 2014 judgment confirming the sale of the Property to the Ferraras is affirmed.

Richard Naiwieha Wurdeman
for petitioners

Lloyd Y. Asato for
respondent R. Onaga, Inc.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Richard W. Pollack

/s/ Michael D. Wilson

/s/ Glenn J. Kim

