**NOT FOR PUBLICATION  IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000099
14-JUL-2022
08:09 AM
Dkt. 98 SO**

NOS. CAAP-18-0000099 AND CAAP-18-0000712


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


<u>CAAP-18-0000099</u>
WILMINGTON SAVINGS FUND SOCIETY, FSB, DOING BUSINESS AS
CHRISTINA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY
AS TRUSTEE FOR BCAT 2015-14BTT, Plaintiff-Appellee,
v.
ISABELO PACPACO DOMINGO; MICHELE ELANOR DOMINGO,
Defendants-Appellants,
and
BANK OF AMERICA, N.A.; HALEWILI PLACE COMMUNITY ASSOCIATION,
Defendants-Appellees,
and
JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50;
DOE CORPORATIONS 1-50; DOE ENTITIES 1-50; and DOE
GOVERNMENTAL UNITS 1-50, Defendants

AND

<u>CAAP-18-0000712</u>
WILMINGTON SAVINGS FUND SOCIETY, FSB, DOING BUSINESS AS
CHRISTINA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY
AS TRUSTEE FOR BCAT 2015-14BTT, Plaintiff-Appellee,
v.
ISABELO PACPACO DOMINGO; MICHELE ELANOR DOMINGO,
Defendants-Appellants,
and
BANK OF AMERICA, N.A.; HALEWILI PLACE COMMUNITY ASSOCIATION,
Defendants-Appellees,
and
JOHN DOES 1-50; JANE DOES 1-50; DOE PARTNERSHIPS 1-50;
DOE CORPORATIONS 1-50; DOE ENTITIES 1-50; and DOE
GOVERNMENTAL UNITS 1-50, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 13-1-202K)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

In these consolidated appeals arising out of a foreclosure action, Defendants-Appellants Isabelo Pacpaco Domingo (**Isabelo Domingo**) and Michele Elanor Domingo (together, the **Domingos**) appeal from the following entered by the Circuit Court of the Third Circuit (**Circuit Court**):

(1) a "Judgment" (**Foreclosure Judgment**), based on "Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Renewed Motion for Summary Judgment and for Interlocutory Decree of Foreclosure" (**Foreclosure Order**), both entered on January 29, 2018;

(2) a "Judgment" (**Confirmation Judgment**), based on an "Order Approving Commissioner's Report and Granting Plaintiff's Motion for Confirmation of Foreclosure Sale, Allowance of Costs, Commissions and Fees, Distribution of Proceeds, Directing Conveyance and for Writ of Possession/Ejectments" (**Confirmation Order**), both entered on August 15, 2018; and

(3) a "Writ of Possession" entered on August 20, 2018.

Each of the above were entered in favor of Plaintiff-Appellee Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, Not in Its Individual Capacity, but Solely as Trustee for BCAT 2015-14BTT (**Wilmington**) and against the Domingos.[1]

The Domingos contend on appeal that the Circuit Court erred in denying the Domingos' motion for summary judgment and in granting summary judgment in favor of Wilmington, because Wilmington admits it was never in possession of the original Note executed by Isabelo Domingo and Wilmington is thus precluded

_____

[1] The Honorable Robert D.S. Kim presided.

2

under Hawaii Revised Statutes (**HRS**) § 490:3-309 (2008) from enforcing the Note.[2]

As discussed below, we conclude this appeal must be dismissed based on mootness.

## I.  Brief Background

Bank of America, N.A. (**Bank of America**) initiated this foreclosure action in 2013.  Wilmington was later substituted into the case as the plaintiff.  In seeking summary judgment, Wilmington presented evidence that the original Note was lost while in the possession of Bank of America.  The mortgage securing the Note was assigned by Bank of America to Wilmington, and an Assistant Vice-President for Bank of America executed an Affidavit of Lost Note.  Wilmington claims to have acquired the rights to enforce the Note from Bank of America on or about August 1, 2015, via the Affidavit of Lost Note.  The evidence is uncontested that Wilmington never held possession of the actual Note.

---

[2]  HRS § 490:3-309 (2008), adopted in 1991, specifically addresses lost, destroyed, or stolen notes, and provides:

> **§490:3-309.  Enforcement of lost, destroyed, or stolen instrument.** (a)  A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in rightful possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
>
> (b)  A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument.  If that proof is made, section 490:3-308 applies to the case as if the person seeking enforcement had produced the instrument.  The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument.  Adequate protection may be provided by any reasonable means.

On January 29, 2018, the Circuit Court granted summary judgment in favor of Wilmington by entering the Foreclosure Order, which states in part:

> 7.     At the time that Bank of America, N.A. commenced this action, Bank of America, N.A. was entitled to enforce the indorsed-in-blank Note as evidence [sic] by a Lost Note Affidavit and the Declaration of Bank of America, N.A. filed herein. [Wilmington] is now the holder of the original Lost Note Affidavit, and entitled to enforce the same.

The Circuit Court's Foreclosure Order also included findings regarding Wilmington's acquisition of rights to enforce the lost Note via the Lost Note Affidavit as well as on equitable grounds; that at the time the Note and Mortgage had been executed, funds from the loan had been used to pay off amounts owed by the Domingos under a mortgage with Ameriquest Mortgage Company; and the protection afforded to the Domingos under an indemnification agreement from Bank of America to borrower Isabelo Domingo for any loss or damage that might occur by reason of a claim by another person to enforce the original Note.  The Foreclosure Judgment was also entered on January 29, 2018.  The Domingos appealed from the Foreclosure Order and Foreclosure Judgment, which resulted in CAAP-18-0000099.

On June 15, 2018, Wilmington filed a "Motion for Confirmation of Foreclosure Sale, Allowance of Costs, Commissions and Fees, Distribution of Proceeds, Directing Conveyance and for Writ of Possession/Ejectments" (**Motion for Confirmation**).  After a hearing on July 10, 2018, the Circuit Court granted Wilmington's Motion for Confirmation of the foreclosure sale and found that Wilmington purchased the subject property at the foreclosure auction and that "the price obtained by the Commissioner fairly represents the market value of the Mortgaged Property under the circumstances of the sale and present economic conditions and that no other person indicated any interest in submitting a higher bid."  On August 15, 2018, the court entered the Confirmation Order and Confirmation Judgment.  On August 20, 2018, the Circuit Court entered the Writ of Possession.  On

4

September 14, 2018, the Domingos appealed from the Confirmation Order, Confirmation Judgment, and Writ of Possession, which became CAAP-18-0000712.  Subsequently, CAAP-18-0000712 was consolidated with CAAP-18-0000099.

While the appeal in CAAP-18-0000099 was pending, the Domingos filed a "Motion to Set Supersedeas Bond for a Stay Pending Appeal" in the Circuit Court on March 7, 2018.  On April 16, 2018, the Domingos filed a Motion for Stay Pending Appeal in CAAP-18-0000099 arguing that "though the Circuit Court has a ministerial duty to set the amount of a supersedeas bond so that Appellants may obtain a stay, following a hearing on April 5, 2018, the Circuit Court denied the motion by minute order on April 10, 2018."  (Footnote omitted.)  The record shows that after the hearing on April 5, 2018, the Circuit Court entered an "Order Denying [Domingos'] Motion to Set Supersedeas Bond for a Stay Pending Appeal" on May 8, 2018.  On May 11, 2018, we granted in part the Domingos' Motion for Stay Pending Appeal "on the condition that Appellants submit to this court for its approval a supersedeas bond in an amount of Three-Hundred Thousand and no/100 Dollars ($300,000). The stay will take effect upon the approval of the supersedeas bond by this court."  The Domingos failed to submit a supersedeas bond to this court and thus failed to obtain a stay.

## II.  Motion to Dismiss Based on Mootness

On April 1, 2022, Wilmington filed a Motion to Dismiss Appeal asserting that this appeal is moot because the Domingos failed to obtain a stay pending appeal and the subject property has recently been sold and conveyed to a third-party good-faith purchaser during the pendency of the appeal.  Wilmington argues that it bought the subject property at the foreclosure auction and has now sold the property to third-party good-faith purchaser BBNY REO LLC, a Florida Limited Liability Company (**BBNY**). Wilmington submits declarations and exhibits with its motion to show that it sold and conveyed the property to BBNY, that a Special Warranty Deed was recorded on January 4, 2022, and a

Corrective Special Warranty Deed was recorded on March 7, 2022, both in the Land Court.

The Domingos do not dispute that they failed to obtain a supersedeas bond and thus failed to obtain a stay pending this appeal.  However, the Domingos argue that the authorities that Wilmington relies upon are inapplicable to this case, the case is not moot, and we should deny the motion to dismiss.

The Hawaiʻi Supreme Court has explained mootness as follows:

> A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law. The rule is one of the prudential rules of judicial self-governance founded in concern about the proper –- and properly limited –- role of the courts in a democratic society. We have said the suit must remain alive throughout the course of litigation to the moment of final appellate disposition to escape the mootness bar.

Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007) (citations and emphasis omitted).  It is well established that it is the appellant's burden to seek a stay if post-appeal transactions could render the appeal moot. Bank of New York Mellon v. R. Onaga, Inc., 140 Hawaiʻi 358, 367, 400 P.3d 559, 568 (2017) (quoting Lathrop v. Sakatani, 111 Hawaiʻi 307, 313, 141 P.3d 480, 486 (2006)).

A.   **The City Bank Rule**

This court has stated "[t]he general rule is that the right of a good faith purchaser to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a supersedeas bond has not been filed." City Bank v. Saje Ventures II, 7 Haw. App. 130, 133, 748 P.2d 812, 814 (1988) (brackets, internal quotation marks and citation omitted).  "The purpose of the rule is to advance the stability and productiveness of judicial sales." Id. (brackets, internal quotation marks and citation omitted).  Exceptions to this rule are where the reversal is based on jurisdiction grounds or where the purchaser is the mortgagee since he "does not free himself from the underlying dispute to which he is a party." Id.

(emphasis added) (brackets and citation omitted).  In City Bank, a mortgagor appealed from an order confirming a commissioner's public auction sale.  Id. at 131, 748 P.2d at 813.  This court noted there was nothing to indicate the third-party purchaser was not a good-faith purchaser and there was no stay of the confirmation order, and thus the appeal was deemed to be moot. Id. at 133-34, 748 P.2d at 814-15.

In Onaga, 140 Hawaiʻi at 367, 400 P.3d at 568, the Hawaiʻi Supreme Court explained "the City Bank rule makes practical sense in the foreclosure context and is consistent with the principles underlying the Land Court system . . . The policy underlying this rule is to encourage nonparty individuals to bid at foreclosure sales." (brackets, internal quotation marks and citation omitted).  The Hawaiʻi Supreme Court then expressly adopted the City Bank rule "for application to Land Court properties as well as properties administered pursuant to HRS Chapter 502 (Regular System)[,]" and held that "an appellant challenging a foreclosure must post a supersedeas bond or otherwise obtain a stay pursuant to [Hawaiʻi Rules of Civil Procedure (**HRCP**)] Rule 62 or Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 8."  Onaga, 140 Hawaiʻi at 367, 400 P.3d at 568 (footnotes omitted).  The supreme court concluded:

> A party who wishes to stay an order confirming a foreclosure sale pending appeal must post a supersedeas bond or otherwise obtain a stay pursuant to HRCP Rule 62 or HRAP Rule 8.  If a stay is not obtained and the property is sold to a bona fide purchaser, the appeal should be dismissed as moot because no effective relief can be granted.

Id. at 370, 400 P.3d at 571.

The Domingos argue that Onaga only applies when the third-party purchaser obtains the property from the commissioner and should not apply here where Wilmington obtained the property from the commissioner and then subsequently sold it to a third-party.  In other words, the Domingos argue that the second exception articulated in City Bank should apply because the

purchaser at the foreclosure sale is the mortgagee.[3]

We recognize the circumstances in Onaga are different than the instant case because, in Onaga, the third-party purchasers obtained the property directly from the foreclosure sale.  In that case, R. Onaga, Inc. (**Onaga**) and The Bank of New York Mellon FKA the Bank of New York (**BONY**) each initiated foreclosure proceedings against the owners of the subject property and the circuit court granted summary judgment in favor of BONY, determining that BONY had a first priority lien.  Onaga, 140 Hawaiʻi at 360, 400 P.3d at 561.  The Ferraras then bought the property at the foreclosure sale.  Id.  Onaga initiated two separate appeals, from the summary judgment in favor of BONY and then from the judgment confirming the foreclosure sale, but Onaga failed to post a supersedeas bond ordered by the Circuit Court and thus did not obtain a stay pending the appeal.  Id.  The supreme court held that Onaga failed to obtain a stay and thus "may not attack a good-faith purchaser's title to property purchased at a judicial sale and confirmed by court order."  Id. at 367, 400 P.3d at 568.  The supreme court further determined that the Ferraras had purchased the property in good-faith.  Id. at 367 n.13, 368, 400 P.3d at 568 n.13, 569.

Although the circumstances in Onaga vary from the instant case, this court applied the City Bank rule to circumstances akin to this case.  In DB Private Wealth Mortg., Ltd. v. Bouley, No. CAAP-14-0000585, 2016 WL 3548347 (Haw. App. June 28, 2016) (SDO), the foreclosing party was DB Private Wealth Mortgage, Ltd. (**DB**), which obtained a foreclosure judgment against the defendants (the **Bouleys**) and then obtained the property via a Commissioner's Deed registered in Land Court.  Id. at *1-2.  The Bouleys appealed from, *inter alia*, a stipulated confirmation order.  Id. at *1.  In the meantime, DB conveyed the property to Zumirez Drive, LLC (**Zumirez**) by way of Quitclaim Deed

---

[3]  The Domingos do not assert that the first exception to the City Bank rule applies here, *i.e.*, that the challenged Circuit Court judgments and orders should be reversed on jurisdictional grounds.

registered in Land Court, and thereafter, Zumirez sold the property to the Trustees of the William C. and Donna K. Johnson Revocable Trust (the **Johnsons**) with title transferring by Warranty Deed.  Id. at *2.  This court addressed whether the appeal was moot because the Bouleys had failed to obtain a stay and the property had been sold to a good-faith third-party purchaser.[4]  Id.  Although this court recognized the exceptions to the City Bank rule, we held that "neither exception applies here, as the Bouleys do not request reversal of the orders based on jurisdictional grounds, and the Johnsons were not the mortgagee."  Id. at *3; see also In re Nat'l Mass Media Telecomm. Sys. Inc., 152 F.3d 1178 (9th Cir. 1998) (affirming a district court's dismissal of plaintiff's appeal from bankruptcy court as moot where plaintiff failed to obtain a stay, the lender purchased plaintiff's property at a foreclosure sale and then sold the property to a non-party).

Thus, in light of DB Private Wealth Mortg., we reject the Domingos' argument that the second exception to the City Bank rule applies in this case.  Here, as in DB Private Wealth Mortg., mortgagee Wilmington purchased the property at the commissioner's sale, but has now sold the property to a third-party, BBNY.  Further, as discussed below, we conclude that BBNY is a good-faith third-party purchaser.

The Domingos assert Wilmington has not detailed who BBNY is or how it is a good-faith purchaser.[5]  "An innocent or good faith purchaser is one who, by an honest contract or agreement, purchases property or acquires an interest therein,

---

[4]  The Bouleys did not challenge or deny that the Johnsons were good-faith third-party purchasers.  Id. at *2.

[5]  The Domingos also argue that the matter must be remanded to the Circuit Court for an evidentiary hearing to determine whether BBNY is a good-faith purchaser because "[t]his Court is not a court where evidence can be taken."  However, in Onaga, the Ferraras intervened while the case was on appeal and moved to dismiss, asserting the appeal was moot because they had purchased the property.  140 Hawaiʻi at 360, 400 P.3d at 561.  The Hawaiʻi Supreme Court determined the appeal was moot without remanding to the circuit court for fact finding.  Id.

without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity in the title of the seller."  Onaga, 140 Hawaiʻi at 367 n.13, 400 P.3d at 568 n.13 (citation and internal quotation marks omitted).

Wilmington has provided, *inter alia*, a declaration by William J. Bymel, manager of BBNY (**Bymel Declaration**).  Bymel attests that BBNY entered into an agreement to purchase and did purchase the subject property from Wilmington.  Bymel further attests that BBNY is not affiliated with or otherwise related to or connected to Wilmington or its loan servicer, Selene Finance, LP, and that the price and terms of the purchase were negotiated at "arms-length."  The Bymel Declaration indicates that BBNY is a good-faith purchaser and the Domingos fail to show otherwise. See City Bank, 7 Haw. App. at 133, 748 P.2d at 814-15 (noting that the purchaser of the property was a third-party not involved in the case and "[t]here is nothing in the record to indicate that [the third-party purchaser] was not a good faith purchaser"); see also Lathrop, 111 Hawaiʻi at 313-14, 141 P.3d at 486-87 (noting in an appeal from an order expunging a *lis pendens* that "it is appellant's burden to seek a stay if post-appeal transactions could render the appeal moot" and holding that a completed sale of the subject property rendered the appeal moot).

We also note that, in Onaga, the Hawaiʻi Supreme Court stated:

> [w]hen the Ferraras purchased the Property, the circuit court had already determined in the consolidated proceedings that BONY had a first priority lien on the Property. Thus, at the time of the purchase, there would not have been an "infirmity in the title" based on Onaga's mortgage.

140 Hawaiʻi at 367 n.13, 400 P.3d at 568 n.13.  Here, when BBNY purchased the subject property, the Circuit Court had already issued its foreclosure decree via its Foreclosure Order and Foreclosure Judgment, and confirmed the foreclosure sale via the Confirmation Order and Confirmation Judgment.  Thus, at the time BBNY purchased the property from Wilmington, there was no

10

"infirmity in the title" based on the Domingos' mortgage to bar BBNY from purchasing the property in good-faith.

## B. Certificates of Title Conclusively Establishes Title

Finally, in Onaga, the Hawaiʻi Supreme Court also held that the appeal in that case was moot because a certificate of title in favor of the purchasers, the Ferraras, had conclusively established their title to the property.  Id. at 368-69, 400 P.3d at 569-70.  In Onaga, the supreme court noted that in Aames Funding Corp. v. Mores, 107 Hawaiʻi 95, 110 P.3d 1042 (2005), which dealt with foreclosure by power of sale (and not foreclosure by action), it had held that "conclusive effect is to be given the certificate of title on the question of title to land."  Onaga, 140 Hawaiʻi at 368, 400 P.3d at 569 (quoting Aames, 107 Hawaiʻi at 101, 110 P.3d at 1048).  The court in Onaga further expressed:

> by relying on certificates of title, the Torrens system is intended to promote "certainty, economy, simplicity, and facility."  11 Thompson on Real Property, § 92.10(a) (David A. Thomas ed., 3rd ed. 2015).  Giving certificates of title conclusive effect in the judicial foreclosure context, as well as in the non-judicial foreclosure context, furthers these purposes.

Id.  The supreme court then held,

> title to the Property has already passed to the Ferraras. See HRS § 501-118 ("After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land."). Allowing Onaga to undo or otherwise hinder the sale of the Property to the Ferraras would be inconsistent with the purposes underlying our Land Court system. See HRS § 501-88 ("The original certificate in the registration book, and any copy thereof duly certified[,] ... shall be conclusive as to all matters contained therein, except as otherwise provided in this chapter["]).

Id. at 368-69, 400 P.3d at 569-70 (emphasis added) (some alterations in original).

Thus, we further recognize that title to the subject property was conveyed to BBNY by Special Warranty Deed and Corrective Special Warranty Deed, which were recorded in the Land Court under Certificate of Title 1229619.  As recognized by the Hawaiʻi Supreme Court in Onaga, the certificates of title

conclusively establish BBNY's title to the property, and allowing the Domingos to undo the sale of the property to BBNY would be inconsistent with the purposes underlying the Land Court system.

### III.  Conclusion

Given the circumstances in this case, no effective relief can be granted to the Domingos given the sale of the property to third-party good-faith purchaser BBNY, and further the certificates of title transferring title to BBNY are conclusive.  Therefore, this appeal is dismissed as moot.

DATED:  Honolulu, Hawaiʻi, July 14, 2022.

| | |
|---|---|
| Keith M. Kiuchi, | /s/ Lisa M. Ginoza |
| (Gary Victor Dubin and | Chief Judge |
| Frederick J. Arensmeyer | |
| on the briefs), for | /s/ Katherine G. Leonard |
| Defendants-Appellants | Associate Judge |
| | |
| David B. Rosen, | /s/ Karen T. Nakasone |
| David E. McAllister, | Associate Judge |
| Justin S. Moyer, | |
| Christina C. Macleod, | |
| (Aldridge Pite, LLP) | |
| for Plaintiff-Appellee | |