**\*\* FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER \*\***

**Electronically Filed
Supreme Court
SCWC-18-0000099
10-SEP-2024
09:59 AM
Dkt. 53 OPA**

SCWC-18-0000099
(Consolidated with SCWC-18-0000712)

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

_____

WILMINGTON SAVINGS FUND SOCIETY, FSB, DOING BUSINESS AS
CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY
AS TRUSTEE FOR BCAT 2015-14BTT,
Respondent/Plaintiff-Appellee,

vs.

ISABELO PACPACO DOMINGO and MICHELE ELANOR DOMINGO,
Petitioners/Defendants-Appellants,

and

BANK OF AMERICA, N.A. and HALEWILI PLACE COMMUNITY ASSOCIATION,
Respondents/Defendants-Appellees.

_____

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000099; CAAP-18-0000712; CASE NO. 13-1-202K)

SEPTEMBER 10, 2024

RECKTENWALD, C.J., McKENNA, and EDDINS, JJ., and CIRCUIT JUDGE
REMIGIO, IN PLACE OF GINOZA, J., RECUSED, AND CIRCUIT JUDGE
SOUZA, IN PLACE OF DEVENS, J., RECUSED.

OPINION OF THE COURT BY McKENNA, J.

### I. Introduction

This is the second time this foreclosure case has come to this court on certiorari.  Isabelo Pacpaco Domingo ("Mr. Domingo") and his wife, Michele Elanor Domingo ("Mrs. Domingo") (collectively, "the Domingos") Domingos defaulted on a mortgage refinance loan for their Kailua-Kona property.  The Domingos did not file a counterclaim to Wilmington Savings Fund Society, FSB ("Wilmington")'s foreclosure complaint.  The Circuit Court of the Third Circuit for the State of Hawaiʻi ("third circuit") issued a foreclosure judgment and ordered the property to be sold at public auction.

The Domingos appealed the foreclosure judgment.  On appeal, the Intermediate Court of Appeals ("ICA") granted the Domingos' motion to stay the foreclosure judgment conditioned upon them posting a supersedeas bond of $300,000.  No supersedeas bond was ever posted.

A judicial foreclosure sale then ensued.  At public auction, Wilmington placed the highest bid.  The third circuit confirmed the sale ("confirmation judgment").  The Domingos then appealed the confirmation judgment, which did not assert any new bases for appeal based on the foreclosure sale process.

Months later, however, the Domingos filed a separate complaint for wrongful foreclosure and to quiet title in the Circuit Court of the First Circuit for the State of Hawaiʻi

2

("first circuit"). They also filed a lis pendens in the Land Court of the State of Hawai'i ("land court"). The land court certificate of title issued to Wilmington contained an exception for the first circuit lawsuit. Wilmington later sold the property to BBNY REO LLC ("BBNY") at a deeply discounted price due to the pending lawsuit.

The ICA granted Wilmington's motion to dismiss the consolidated appeals from the foreclosure and confirmation judgments, deeming the appeals moot because BBNY had purchased the property as a good faith purchaser.

The Domingos then filed their first application for certiorari. We held that whether BBNY was a good faith purchaser was a factual issue to be determined by the third circuit.

On remand, the third circuit deemed BBNY a good faith purchaser. The ICA then dismissed the Domingos' appeals as moot because they had not posted the ordered supersedeas bond.

The Domingos then filed this application for writ of certiorari. In addressing the questions raised on certiorari and additional legal issues raised by these appeals, we hold as follows: (1) Even if the mortgagee is the purchaser at a judicial foreclosure sale, an appellant of a foreclosure judgment must satisfy conditions imposed to obtain a stay pending appeal of the foreclosure, including posting a

supersedeas bond, in order to prevent transfer of title from the mortgagee-purchaser to a good faith purchaser and because the Domingos did not post the supersedeas bond ordered as a condition of stay, Wilmington's transfer of title was valid, as long as it was to a good faith purchaser; (2) A purchaser who otherwise meets good faith purchaser requirements does not lose that status based on knowledge of a pending wrongful foreclosure claim when the mortgagor fails to post a supersedeas bond ordered as a condition of stay and, therefore, both BBNY and the subsequent purchasers from BBNY were good faith purchasers; (3) A lis pendens does not eliminate the need to post a supersedeas bond ordered as a condition to stay an appeal of a foreclosure judgment and the Domingos' lis pendens does not affect the title conveyed to the good faith purchasers; (4) The collateral consequences exception to the mootness doctrine does not apply because the Domingos filed their first circuit lawsuit before our original opinion in Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 428 P.3d 761 (2018) ("Reyes-Toledo II"), and their first circuit lawsuit is an improper collateral attack on the foreclosure and confirmation judgments; and (5) To the extent Reyes-Toledo II suggested that the compulsory counterclaim rule does not apply to wrongful foreclosures counterclaims, it is overruled; but (6) If a litigant filed a separate wrongful foreclosure lawsuit instead of a counterclaim before entry of a

foreclosure judgment after October 9, 2018, when Reyes-Toledo II was originally published, up until the date of this opinion, that separate lawsuit is not subject to dismissal based on the compulsory counterclaim rule.

Based on the reasoning above, we affirm the ICA's December 29, 2023, published "Order Dismissing Appeal as Moot by Ginoza, Chief Judge."

## II. Background

### A. Factual background

On February 15, 2007, Mr. Domingo obtained a $625,500 mortgage refinance loan from SecurityNational Mortgage Company, a Utah corporation. As security for the loan, the Domingos granted a mortgage on their property in Kailua-Kona ("the property").

### B. Foreclosure, sale, and initial appellate proceedings

On March 13, 2013, Bank of America ("BOA) filed a foreclosure complaint in the third circuit. BOA claimed it had taken possession of the original note on or before April 17, 2007 but admitted to losing it sometime before December 2012. On November 25, 2016, Wilmington substituted as plaintiff.[1]

On December 1, 2017, Wilmington moved to foreclose. The Domingos opposed, arguing Wilmington did not satisfy Hawai'i

---

[1] The Honorable Ronald Ibarra presided.

5

Revised Statutes ("HRS") § 490:3-309 (1991)[2] requirements for a person not in possession of the note. The Domingos also filed their own motion for summary judgment on the same basis.

After a December 27, 2017 hearing, on January 29, 2018, the third circuit granted Wilmington's motion and filed orders for an interlocutory decree of foreclosure, appointing a commissioner, and for the property be sold at public auction, as well as a judgment (collectively "foreclosure judgment").[3] On February 20, 2018, the Domingos filed a notice of appeal from the foreclosure judgment.[4]

---

[2]     HRS § 490:3-309 provides in part:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in rightful possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

[3]     The third circuit court ruled that Wilmington was able to enforce the lost note pursuant to HRS § 490:3-309 because BOA was entitled to enforce the indorsed-in-blank note as evidenced by the lost note affidavit and the declaration of BOA and that Wilmington, as the holder of the original lost note affidavit is entitled to enforce the note. The third circuit also noted that the lost note affidavit included an indemnification agreement from BOA, in favor of the Domingos; thus, the Domingos were adequately protected against any loss that might occur should any other party seek to enforce the note.

[4]     This appeal was filed under case number CAAP-18-0000099.

On April 16, 2018, the Domingos filed a motion in the ICA for a stay pending appeal; Wilmington opposed.[5]  On May 11, 2018, the ICA issued an order conditioning a stay of the foreclosure on the posting of a $300,000 supersedeas bond.

The ICA's order states in part:

> [I]t appears that [the Domingos] seek to stay, pending appeal further enforcement of the [third circuit]'s January 29, 2018 Judgment in favor of [Wilmington].
> Upon review of the record, including evidence of the Property's tax-assessed value, the asserted positions of the parties, and other factors and circumstances in the case, it appears that a supersedes bond in the amount of $300,000 would adequately secure [Wilmington's] interest pending appeal.
> Therefore, IT IS HEREBY ORDERED that the Motion for Stay is granted in part.  A stay of further enforcement of the Judgment is granted on the condition that Appellants submit to this court for its approval a supersedeas bond in an amount of [$300,000].  The stay will take effect upon the approval of the supersedeas bond by this court.

(Emphasis added.)  No bond was ever posted.

On May 29, 2018, the court-appointed commissioner held an auction.  Wilmington placed a credit bid of $892,500 and acquired title.  On August 15, 2018, the third circuit confirmed

---

[5]    On March 18, 2018, the Domingos filed a motion in the third circuit to set supersedeas bond for a stay pending appeal, which the third circuit denied.  The Domingos therefore filed this motion in the ICA pursuant to Rule 8 of the Hawai'i Rules of Appellate Procedure ("HRAP"), which provides in relevant part:

> (a) Motions for stay, supersedeas bond or injunction in the appellate courts. A motion for stay of the judgment or order in a civil appeal, or for approval of a supersedeas bond . . . , shall ordinarily be made in the first instance to the court or agency appealed from. . . .
> (b) Stay may be conditioned upon giving of bond; proceedings against sureties. Relief available in the appellate courts under this rule may be conditioned upon the filing of a bond or other appropriate security in the court or agency appealed from. . . .

HRAP Rule 8 (2010).

the sale of the property to Wilmington, entered judgment, and ordered issuance of a writ of possession ("confirmation judgment").

On September 14, 2018, the Domingos filed a notice of appeal from the confirmation judgment.[6]  This appeal did not raise any additional appellate issues.

On October 1, 2018, the Domingos filed a separate complaint in the first circuit against Wilmington, alleging wrongful foreclosure and seeking damages and to quiet title ("first circuit lawsuit").[7]  That day, they also filed a notice of pendency of action ("lis pendens") and recorded it in the land court.

On January 25, 2019, the ICA consolidated the Domingos' appeals from the foreclosure and confirmation judgments.[8]

On December 14, 2021, the land court issued Land Court Certificate of Title No. 1,162,650 identifying Wilmington as the owner of the property ("certificate of title").  The certificate of title subjected Wilmington's title to listed encumbrances that included the Domingos' lis pendens.

---

[6]    Case number CAAP-18-0000712.

[7]    Case number 1CC181001561.

[8]    The ICA ordered that all briefing be filed in CAAP-18-0000099, the foreclosure judgment appeal.

After marketing the property for more than a year, on January 4, 2022, Wilmington sold it to BBNY, a Florida limited liability company, for $400,000. The Domingos' pending appeals and the first circuit lawsuit had a significant negative impact on the sale price.

On September 6, 2022, BBNY further conveyed the property to two individuals ("subsequent purchasers"). The deeds and pending certificates of title to BBNY and the subsequent purchasers do not appear to have included the Domingos' first circuit lis pendens as an encumbrance.

In their opening brief in the consolidated appeals, the Domingos asserted that because Wilmington was never in possession of the original promissory note, foreclosure was improperly granted under HRS § 490:3-309. Wilmington responded in its answering brief that it was entitled to foreclose based on its compliance with HRS § 490:3-309's process to foreclose on a lost note as well as based on equitable doctrines.

On April 1, 2022, Wilmington filed a motion to dismiss the consolidated appeals, arguing they were moot because the Domingos failed to post the supersedeas bond and the property had been sold to a good faith purchaser, BBNY. Wilmington asserted that an appellant challenging a foreclosure must post a supersedeas bond or otherwise obtain a stay and that an appellant who failed to obtain a stay by posting a bond cannot

attack a good faith purchaser's title to property purchased at a judicial sale and confirmed by court order. Wilmington cited Bank of N.Y. Mellon v. R. Onaga, Inc., in which adopted the general rule stated by the ICA in City Bank v. Saje Ventures II, 7 Haw. App. 130, 133, 748 P.2d 812, 814 (1988):

> The general rule is that the right of a good faith purchaser to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a supersedeas bond has not been filed. Id. (quoting Leisure Campground & Country Club Ltd. P'ship v. Leisure Estates, 280 Md. 220, 372 A.2d 595,598 (1977)). The ICA explained that the purpose of the rule is to advance the stability and productiveness of judicial sales. Id. (quoting Am. Jur. 2d Judicial Sales § 55 (1969)). It noted that the exceptions to this rule are when the reversal is based on jurisdictional grounds or when the purchaser is the mortgagee, explaining that the mortgagee in that case does not free himself from the underlying dispute to which he is a party. See id. (quoting Leisure Campground, 372 A.2d at 598.

Onaga, 140 Hawai'i 358, 366, 400 P.3d 559, 567 (2017)(partially cleaned up).

In their April 6, 2022, opposition to the motion to dismiss, the Domingos argued that the case had to be remanded to the third circuit for an evidentiary hearing to determine whether BBNY was a good faith purchaser. The Domingos also contended the ICA's review must be based on solely on the record and that the sale to BBNY was not in the record.

On August 26, 2022, the ICA issued an amended summary disposition order determining BBNY to be a third-party good faith purchaser and dismissed the consolidated appeals as moot.

10

On October 7, 2022, the Domingos filed their first application for writ of certiorari, which we accepted. On February 15, 2023, we issued a memorandum opinion ruling that the ICA improperly relied on new evidence submitted with Wilmington's motion to dismiss to deem BBNY a good faith purchaser, which was a disputed factual issue. We vacated the ICA's order with instructions to temporarily remand the case to the third circuit for an evidentiary hearing on the issue. On February 24, 2023, the ICA entered an order for temporary remand to the third circuit.

## C.    Third circuit proceedings on remand

On April 11, 2023, the third circuit[9] held an evidentiary hearing and, a day later, entered its findings of fact and conclusions of law ("FOFs/COLs"). As summarized by the ICA, the third circuit ruled as follows:

> The Circuit Court found, *inter alia*, that BBNY purchased the subject property from Wilmington for a fair price under the circumstances; BBNY is not related or connected to Wilmington or its loan servicer Selene Finance, LP in any way; the sale of the subject property was completed after negotiations with other interested parties failed; the sale of the property from Wilmington to BBNY was negotiated in good-faith and at arms-length; a Special Warranty Deed and Corrective Special Warranty Deed was recorded in the Land Court conveying the property to BBNY; and in purchasing the property, BBNY noted that the Domingos did not obtain a stay of proceedings and did not post any bond in connection with this consolidated appeal. The Circuit Court also found that the Domingos filed an action on October 1, 2018, in the Circuit Court of the First Circuit (Civil No. 18-1-1561) asserting claims against Wilmington for damages for wrongful foreclosure and to quiet title. A Notice of Pendency of Action (*lis pendens*) relating to the civil case

---

[9]    The Honorable Robert D.S. Kim presided.

11

> was recorded in the Land Court and Wilmington's Certificate of Title to the subject property lists the *lis pendens* as an encumbrance. The Circuit Court determined, *inter alia*, that without a supersedeas bond, BBNY's knowledge of the Domingos' claims against Wilmington, including the pending consolidated appeal and *lis pendens*, did not prohibit Wilmington from selling the property to BBNY; and BBNY was a good-faith third-party purchaser of the subject property. The Circuit Court also found that after purchasing the property from Wilmington, BBNY took possession of the property, marketed the property for sale, and sold it to another third party purchaser; the sale of the property from BBNY to the subsequent purchasers was also negotiated in good-faith and at arms-length; and a Special Warranty Deed was executed and recorded in the Land Court. The Circuit Court determined the subject property is currently owned by the subsequent purchasers who are also third-party, good-faith purchasers of the property.

## D.    Further ICA proceedings

On December 29, 2023, the ICA published its "Order Dismissing Appeal as Moot by Ginoza, Chief Judge."  This order dismissed the consolidated appeals as moot.  The ICA rejected the Domingos' argument that their failure to post a supersedeas bond was of no consequence to the justiciability of their consolidated appeals.  The ICA also declined to apply the mortgagee exception to the City Bank rule (for when the purchaser is the mortgagee) because Wilmington purchased the property at the commissioner's sale and sold it to BBNY, which was good faith purchaser.  The ICA ruled there was no "infirmity in the title" when BBNY purchased the property.

The ICA also rejected the Domingos's argument that the lis pendens was an alternative to posting a supersedeas bond and obtaining a stay of the foreclosure judgment.  The ICA ruled the Domingos waived their lis pendens argument because it was not

12

raised in their opposition to Wilmington's motion to dismiss and was only raised in their motion for reconsideration. Addressing the merits in any event, the ICA noted this court's cases expressing concerns regarding potential abuse of the lis pendens doctrine and indicating that a lis pendens does not serve the same function as a stay.

The ICA then discussed a Maryland appellate opinion, Creative Development Corp. v. Bond, 367 A.2d 566 (Md. Ct. Spec. App. 1976),[10] discussed in Section IV.A.2 below, which deemed the lis pendens doctrine inapplicable because the debtor sought to have it "both ways" with an appeal tying up sale of the property, while simultaneously not incurring the expense of posting a bond. Creative Dev., 367 A.2d at 569-70. The Maryland court ruled this to be an improper collateral attack on the foreclosure judgment. Id.

The ICA therefore determined the lis pendens did not prevent BBNY from purchasing the property from Wilmington in good faith. The ICA pointed out that the Domingos had not argued applicability of any exception to the mootness doctrine and also determined that, in any event, no exception applied. The ICA applied the reasoning of Creative Development in ordering the appeals dismissed.

---

[10]    The Maryland Court of Special Appeals is now the Appellate Court of Maryland. See infra n. 13.

13

### E.    Certiorari proceedings

The Domingos' three questions on certiorari are restated as follows:

> 1. Did the ICA err, contrary to its own decision in <u>City Bank</u> and this Court's decision in <u>Onaga</u>, when it determined that because the Domingos did not post a supersedeas bond, a post-foreclosure private sale of foreclosed property by the mortgagee to a non-party buyer rendered these consolidated appeals moot?
>
> 2. Did the ICA commit err, contrary to the lis pendens doctrine as codified in HRS § 501-151 for land court property when it affirmed the third circuit's conclusion that non-party buyers of the property from Wilmington during the pendency of these appeals were not charged with knowledge of an infirmity of title, even though a separate wrongful foreclosure and quiet title lawsuit was and remains pending in the first circuit and even though the Domingos had previously recorded a lis pendens which appeared as an encumbrance upon Wilmington's land court certificate of title?
>
> 3. Did the ICA err contrary to this Court's opinions in <u>Bank of Am., N.A. v. Reyes-Toledo</u>, 143 Hawaii 249, 428 P.3d 761 (2018), when it dismissed these consolidate appeals based on mootness even though a separate lawsuit remains pending in which the Domingos seek damages for Wilmington's wrongful foreclosure, making the "collateral consequences" exception to the mootness doctrine applicable?

## III. Standards of Review

### A.    Mootness

Under Hawai'i law, mootness is a prudential concern of judicial self-governance founded in concern about the proper – and properly limited – role of courts in a democratic society. <u>State v. Hewitt</u>, 153 Hawai'i 33, 41, 526 P.3d 558, 566 (2023)(cleaned up).  The mootness doctrine is properly invoked where events have so affected the relations between the parties that the two conditions for justiciability relevant on appeal –

adverse interest and effective remedy — have been compromised.

Okada Trucking Co., Ltd. v. Bd. Of Water Supply, 99 Hawai'i 191, 195-96, 53 P.3d 799, 803-04 (2002) (cleaned up).

## B.    Circuit court's conclusions of law

> A COL [conclusion of law] is not binding upon an appellate court and is freely reviewable for its correctness.  [The appellate court] ordinarily reviews COLs under the right/wrong standard.  Thus, a COL that is supported by the trial court's FOFs [findings of fact] and that reflects an application of the correct rule of law will not be overturned.  However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005)(cleaned up).

## IV.   Discussion

## A.    The Domingos' questions on certiorari lack merit

**1.    Because the property was conveyed to a good faith purchaser, failure to post the supersedeas bond rendered these appeals, which only raised title issues, moot**

The Domingos' first question on certiorari asks whether the ICA erred when in determined their appeals moot based on the Domingo's failure to post a supersedeas bond and the sale of the property to a good faith purchaser. For the reasons below, we answer this question "no."

a.   **Failure to satisfy conditions for a stay pending appeal of a foreclosure judgment, including failure to post a supersedeas bond, renders title issues moot when the property is sold by a mortgagee purchaser to a good faith purchaser**

The ICA's May 11, 2018, order expressly conditioned a stay of the foreclosure judgment pending appeal on the filing of a $300,000 supersedeas bond.  The Domingos argue their failure to post this bond is inconsequential because Wilmington, as the mortgagee, was the purchaser.  They ground this argument on the "mortgagee exception" of the general rule we adopted in Onaga.

To reiterate, the general rule is that the right of a good faith purchaser to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a supersedeas bond has not been filed.  Onaga, 140 Hawai'i at 366, 400 P.3d at 547.  An exception to this general rule, however, is when the purchaser is the mortgagee, because the mortgagee does not free itself from the underlying dispute to which it is a party.  Id.

In other words, if a mortgagee-purchaser at the judicial sale retains title pending the appeal of a foreclosure judgment which is vacated or reversed on appeal, both the foreclosure and confirmation judgments can be set aside, even if a supersedeas bond ordered as a condition of stay has not been filed.  In contrast, if a supersedeas bond ordered as a condition to stay the foreclosure judgment is not posted and the mortgagee-

16

purchaser sells the property to a good faith purchaser, a vacatur or reversal of a foreclosure judgment cannot affect title conveyed to the good faith purchaser.

Onaga is on point. It arose from foreclosure proceedings between mortgagors and mortgagees R. Onaga Inc. and the Bank of New York Mellon ("BONY"). 140 Hawai'i at 360, 400 P.3d at 560. The first circuit determined BONY had a first priority lien and granted BONY's motion approving the sale of the property to third parties. Onaga, 140 Hawai'i at 362, 400 P.3d at 563. Onaga challenged the court's order but did not post a supersedeas bond. Id. We held that an appellant challenging a foreclosure must post a supersedeas bond or otherwise obtain a stay and that an appellant who has failed to obtain a stay by posting a bond may not attack a good faith purchaser's title to property purchased at a judicial sale and confirmed by court order. Onaga, 140 Hawai'i at 367, 400 P.3d at 568.

The ICA's decision in City Bank, on which the Onaga general rule is based, is also on point. In City Bank, the mortgagee successfully sought a foreclosure judgment against Saje Ventures II. 7 Haw. App. at 132, 748 P.2d at 814. The property in dispute was then sold at public auction to a third party, Outrigger Hotel Hawai'i, and confirmed by the circuit court. Id. Saje Ventures II appealed. Id. The ICA determined that because a third party purchased the property at the foreclosure sale and

there was nothing in the record to indicate that Outrigger was not a good faith purchaser, there could be no stay of execution of the confirmation of sale. City Bank, 7 Haw. App. at 133, 748 P.2d at 815.

When the ICA discussed the general rule, it explicitly relied on a Maryland case, Leisure Campground and Country Club Ltd. Partnership v. Leisure Estates, 372 A.2d 595, 598 (Md. 1977). Leisure Campground is an opinion of the Court of Appeals of Maryland.[11] That opinion further analyzed the purchaser-mortgagee exception later discussed in City Bank and Onaga. The Maryland apex court noted that the policy underlying the general rule "is to encourage nonparty individuals to bid at foreclosure sales." 372 A.2d at 598. The rationale for the purchaser-mortgagee exception is that because the mortgagee has the land in its hands after purchase, "there is no reason why [the mortgagee] should not be bound by a decision of the court requiring delivery of the property." Id. In Leisure Campground, because the mortgagee purchased the property at the foreclosure sale, "and the intervening rights of innocent nonparty purchasers [were] therefore not involved," a

---

[11] The Court of Appeals of Maryland is now the Supreme Court of Maryland; it was and remains the court of last resort of the Maryland state judiciary. The name of the Maryland Court of Special Appeals was simultaneously changed to the Appellate Court of Maryland. https://www.courts.state.md.us/media/news/2022/pr20221214 [https://perma.cc/WZ9G-D8HP].

supersedeas bond was not required to avoid mootness.  Id.
(emphasis added).  Thus, Leisure Campground also ruled that even
if the mortgagee is the foreclosure sale purchaser, if the
mortgagor fails to post a supersedeas bond ordered as a
condition of stay, rights of "innocent nonparty purchasers"
cannot be affected.

Therefore, although this holding is implicit in our
precedent, we now explicitly hold that even if the mortgagee is
the purchaser at a judicial foreclosure sale, an appellant of a
foreclosure judgment must satisfy conditions imposed to obtain a
stay pending appeal of the foreclosure, including posting a
supersedeas bond, in order to prevent transfer of title from the
mortgagee purchaser to a good faith purchaser.  Thus, without
the posting of a supersedeas bond ordered as a condition of
stay, Wilmington's transfer of title was valid, as long as it
was to a good faith purchaser.

As argued by Wilmington, adoption of the Domingos'
position, that they could continue to seek return of title based
on an alleged wrongful foreclosure without posting the
supersedeas bond, would have profound consequences on Hawai'i
foreclosures.  Foreclosing mortgagees would be dissuaded from
bidding at foreclosure auctions as they would face the risk of
having to hold properties pending determination of appeals while
paying added interest, taxes, insurance, association dues and

other expenses. Mortgagors would also be incentivized to appeal irrespective of merit without incurring the cost of posting a bond. Costs would increase and delays in obtaining final judgment would harm junior creditors and increase demands on our courts. Secondary consequences could also include greater restrictions on new mortgage loans in Hawai'i and decreased availability of home equity loans.

### b. BBNY was a good faith purchaser

For these reasons, Wilmington's transfer of title was valid, as long as it was to a good faith purchaser. The ICA affirmed the third circuit's decision on remand that BBNY was a good faith purchaser.

Our appellate courts have adopted the "good faith purchaser" standard for a purchaser of property acquired in a judicial sale. See Onaga, 140 Hawai'i at 360, 400 P.3d at 560 (using the language "the right of a good faith purchaser to *receive property acquired at a judicial sale . . .*") (emphasis added). "An innocent or good faith purchaser is one who, by an honest contract or agreement, purchases property or acquires an interest therein, without knowledge, or means of knowledge sufficient to charge him in law with knowledge, of any infirmity

in the title of the seller." Onaga, 140 Hawai'i at 367 n.13, 400 P.3d at 568 n.13.[12]

The Domingos argue that BBNY was not a good faith purchaser because it purchased the property with actual knowledge of the Domingos' pending civil suit and the lis pendens, and at a substantially discounted price due to the on-going litigation. There is no dispute that BBNY took the property with constructive, if not actual, knowledge of the Domingos' separate lawsuit and lis pendens. The certificate of title to Wilmington had a specific exclusion for the Domingos' first circuit mortgage foreclosure lawsuit.

We agree with the third circuit and ICA, however, that BBNY was a good faith purchaser despite knowledge of the Domingos' first circuit wrongful foreclosure lawsuit and lis pendens. We now adopt the ICA's position in its summary disposition order in In re Marn Family Litigation, 143 Hawai'i 236, *4, 426 P.3d 460, *4 (App. Dec. 11, 2015):

> ("[V]irtually every purchaser of a property in a judicial sale has notice of the pending litigation which, if we adopted [the mortgagor's] argument, would leave virtually every judicial sale unsettled, even absent a stay pending appeal. This result would be completely contrary to the policy of advancing the stability and productiveness of

---

[12] Since the ICA's 1988 opinion in City Bank, Hawai'i appellate decisions have consistently applied the "good faith purchaser" standard for purchasers at judicial sales. Cases involving non-judicial foreclosure sales have referenced other standards, such as "bona fide purchaser" and "innocent purchaser for value." See, e.g., Delapinia v. Nationstar Mortgage LLC, 150 Hawai'i 91, 94-95, 497 P.3d 106, 109-10 (2021).

21

judicial sales.") (footnote omitted); see also 47 Am. Jur. 2 Judicial Sales § 23 (2006) ("The fact that a purchaser at a judicial sale has notice merely of a contemplated appeal from the decree directing the sale does not deprive such purchaser of the status of a purchaser in good faith.") (footnote omitted).

Here, BBNY had actual or constructive knowledge of the Domingos' first circuit wrongful foreclosure lawsuit. But despite what could be construed as suggestions in some Hawai'i precedent that a purchaser's knowledge of a pending wrongful foreclosure claim precludes good faith purchaser status, we hold that when a mortgagor fails to post a supersedeas bond ordered as a condition of stay, a purchaser who otherwise meets good faith purchaser requirements does not lose good faith purchaser status. In this case, we agree with the third circuit and ICA's analysis that both BBNY and the subsequent purchasers from BBNY qualified as good faith purchasers.

2. **The lis pendens did not create an infirmity on title based on the Domingos' first circuit lawsuit because the Domingos failed to post the supersedeas bond ordered as a condition of stay**

The Domingos's second question on certiorari asks:

2. Did the ICA commit err, contrary to the lis pendens doctrine as codified in HRS § 501-151[13] for land court

―――――――――――

[13]    HRS § 501-151 (2012) provides as follows:

§ 501-151 Pending actions, judgments; recording of notice. No writ of entry, action for partition, or any action affecting the title to real property or the use and occupancy thereof or the buildings thereon, and no judgment, nor any appeal or other proceeding to vacate or reverse any judgment, shall have any effect upon registered land as against persons other than the parties thereto, unless a full memorandum thereof, containing also a

(continued. . .)

22

property when it affirmed the third circuit's conclusion that non-party buyers of the property from Wilmington during the pendency of these appeals were not charged with knowledge of an infirmity of title, even though a separate wrongful foreclosure and quiet title lawsuit was and remains pending in the first circuit and even though the Domingos had previously recorded a lis pendens which appeared as an encumbrance upon Wilmington's land court certificate of title?

We also answer this question, "no." Like the ICA, we find the Maryland appellate court opinion in Creative Dev. instructive.

In Creative Dev., the trustee, Calhoun Bond, Esq. ("Bond"), initiated a foreclosure proceeding on behalf of lender Chase Manhattan Mortgage and Realty Trust ("Chase") against mortgagor, Creative Development Corporation ("Creative"). 367 A.2d at 567. The Maryland circuit court found that Creative had defaulted on the loan and that Bond could sell the property. Id. On appeal to the Maryland appellate court, Creative filed a motion to stay pending appeal, which was denied. Id. at 568. The property was eventually sold to Chase at public auction, who then sold the property to third parties. Id. Thereafter, Creative, unable to post a supersedeas bond to stay the sale to third persons, sought to accomplish the same purpose by filing another suit. Id. Creative argued that because the suit placed third-party

---

(. . .continued)
reference to the number of the certificate of title of the land affected is filed or recorded and registered.

purchasers on notice, the lis pendens doctrine thus applied.

Id.

> The Maryland appellate court disagreed. The court stated:

>> Patently, Creative seeks to invoke lis pendens as a form of supersedeas without incurring the expense of a bond. It is much cheaper to file a lawsuit than to post a supersedeas bond . . . but the suit will not take the place of the bond. If courts were to sanction this practice . . . we would cast a tremendous financial burden upon lenders who would be placed in the position of having won their case and lost it at the same time. . . . It was never contemplated, at least in this State, that lis pendens could be invoked as a result of a collateral attack upon an ostensibly proper judgment, entered after a full hearing, in order to defeat the effect of the judgment and simultaneously avoid the cost of a supersedeas bond . . . Creative seeks to have it both ways:  a viable appeal which ties up the property of Chase, while, at the same time, not going to the expense of posting a bond. It thus, wants to gamble, as it were, with someone else's money. We recognize that which Creative labels lis pendens as an imposter, masquerading as an accepted equitable principle when, in law, equity, and fact, it is not.  Lis pendens does not apply to this case.

Creative Dev., 367 A.2d at 568-570.

Also, as noted by the ICA in its published dismissal order, in Lathrop, 111 Hawai'i at 313-14, 141 P.3d at 486-87, we cited to In re Onouli-Kona Land Co., 846 F.2d 1170 (9th Cir. 1988). In In re Onouli-Kona Land Co., mortgagee Estate of Richards, et al. ("Estate of Richards"), sought to foreclosure on a mortgage against mortgagor Onouli-Kona Land Co. ("Onouli").  846 F.2d at 1171.  Onouli filed a petition for bankruptcy in 1984 and the Estate of Richards purchased the property at a bankruptcy court auction.  Id.  Onouli appealed the bankruptcy court's order but

24

failed to obtain a stay pending appeal. Id. Rather, it filed a notice of lis pendens. Id. The Ninth Circuit ruled that because the Estate of Richards purchased the property in good faith, Onouli's lis pendens did not substitute for failure to obtain a stay, and the appeal was moot. Id. at 1175.

Although this holding is also implicit in our precedent, we explicitly hold that a lis pendens does not eliminate the need to post a supersedeas bond ordered as a condition to stay an appeal of a foreclosure judgment and that a lis pendens does not affect the title conveyed to a good faith purchaser.

3. **The collateral consequences exception to the mootness doctrine does not apply because the Domingos' first circuit lawsuit was an improper collateral attack on the foreclosure judgment**

In their third question on certiorari, the Domingos ask:

> Did the ICA err contrary to this Court's opinions in Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaii 249, 428 P.3d 761 (2018), when it dismissed these consolidate appeals based on mootness even though a separate lawsuit remains pending in which the Domingos seek damages for Wilmington's wrongful foreclosure, making the "collateral consequences" exception to the mootness doctrine applicable?

As noted by the ICA, the Domingos did not argue any exception to the mootness doctrine before the ICA. Therefore, the argument is waived. But even on the merits, the Domingos' argument fails.

The mootness doctrine

> encompass[es] the circumstances that destroy the justiciability of a suit previously suitable for determination. Put another way, the suit must remain alive throughout the course of litigation to the

25

> moment of final appellate disposition. Its chief purpose is to assure that the adversary system, once set in operation, remains properly fueled. The doctrine seems appropriate where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

Lathrop, 111 Hawai'i at 312-13, 141 P.3d at 485-86.  A case is moot if the reviewing court can no longer grant effective relief.  In re Marn Fam., 141 Hawai'i 1, 7, 403 P.3d 621, 627 (2016).

We have recognized three exceptions to the mootness doctrine:  (1) the "capable of repetition, yet evading review" exception; (2) the public interest exception; and (3) the "collateral consequences" exception.  Hamilton ex rel Lethem v. Lethem, 119 Hawai'i 1, 5, 193 P.3d 839, 843 (2008).  To successfully invoke the collateral consequences doctrine,

> the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur.  Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not.  This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself.

Lethem, 119 Hawai'i at 8, 193 P.3d at 846 (concluding that the reputational harm to a father's appeal of an expired temporary restraining order based on allegations of abuse of his daughter, fell within the collateral consequences exception to the mootness doctrine) (cleaned up).

26

The Domingos argue the collateral consequences exception applies based on the ICA's decision in Bank of New York Mellon v. DeShaw, Nos. CAAP-19-0000865, CAAP-22-0000408, 2023 WL 8254510, *7 (Haw. App. Nov. 29, 2023) (mem. op.). In DeShaw, mortgagee BONY filed a foreclosure complaint against mortgagors Dennis Duane DeShaw and Susan Kay Broer-DeShaw ("the DeShaws"). Id., at *1-3. In response, the DeShaws filed an answer and counterclaim, including claims for wrongful foreclosure and to quiet title. Id. at *2.

The first circuit ultimately granted BONY's motion for summary judgment and issued a foreclosure decree and judgment. Id. at *3. The DeShaws appealed. Id. On appeal, BONY argued that because the property had already "sold to a bona fide purchaser" and the DeShaws did not post a supersedeas bond, the appeal was moot. Id. at *5. Based on the "collateral consequences" exception, the ICA did not completely dismiss the appeal because of the possible prejudicial effect of a dismissal to the extent the counterclaim sought damages for wrongful foreclosure. Id. at *7. The mortgagor basically conceded only damages claims remained, arguing "[e]ven if title cannot be recovered, under the counterclaim the issue of damages remains[,]" and that the foreclosure appeal was "not moot because effective relief can be afforded in the form of damages." Id. at *5.

27

The Domingos may have had a basis for arguing applicability of the collateral consequences exception as to a wrongful foreclosure damages claim if they had filed a counterclaim, like the DeShaws.  However, they instead filed a separate wrongful foreclosure and quiet title lawsuit.  Based on the reasoning in Section IV.A.1 above, their quiet title claim in the first circuit lawsuit is in any event also moot.  But their damages claim for wrongful foreclosure is also moot because the first circuit lawsuit is an improper collateral attack on the foreclosure judgment, as explained by the Maryland appellate court in Creative Dev.; therefore, the collateral consequences exception does not apply.

The Domingos' assertion that their separate lawsuit remains viable due to Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 428 P.3d 761 (2018) ("Reyes-Toledo II"), is also without merit. We hold in Section IV.C below that separate lawsuits filed from October 9, 2018 to the date of this opinion, assuming they were filed before foreclosure judgments, are not to be dismissed due to language in that opinion suggesting that wrongful foreclosure claims are not compulsory counterclaims.  But as also explained in Section IV.C, our precedent before Reyes-Toledo II clearly held that known claims for wrongful foreclosure are compulsory counterclaims.  And the Domingos filed their separate first circuit lawsuit on October 1, 2018, eight days before our

original opinion in Reyes-Toledo II.  In it, they asserted claims based on facts they had already unsuccessfully raised to defend against Wilmington's foreclosure judgment.  Because the Domingos filed their first circuit lawsuit before our original opinion in Reyes-Toledo II, they cannot argue they filed the separate lawsuit in reliance on that opinion.  Hence, their first circuit lawsuit was and remains an improper collateral attack on the foreclosure and confirmation judgments and there is no reasonable possibility that prejudicial collateral consequences will occur based on this ruling.  Therefore, the Domingos' appeals are moot.

**C. To the extent Reyes-Toledo II suggested that the compulsory counterclaim rule does not apply to wrongful foreclosures counterclaims, it is overruled**

Although the Domingos cannot claim reliance on our opinion in Reyes-Toledo II, we recognize we may have created confusion regarding applicability of the compulsory counterclaim rule in the following passage from that opinion:

> [A] mortgagor need not wait for a foreclosure decree to assert a wrongful foreclosure claim. If a party with no authority or standing files a foreclosure action, no foreclosure decree would result, yet the mortgagor would have spent time and incurred expenses to defend against such a lawsuit. Allowing a mortgagor to bring a wrongful foreclosure counterclaim without awaiting an actual foreclosure benefits judicial economy and efficiency, as a foreclosure defendant should not have to institute a separate legal action after the pending foreclosure case is decided. Accordingly, a mortgagor should be able to assert a counterclaim for wrongful foreclosure based on the underlying facts of the pending foreclosure case. However, we emphasize this does not mean a mortgagor must assert the wrongful foreclosure claim as a compulsory counterclaim.

29

Reyes-Toledo II, 143 Hawai'i at 264, 428 P.3d at 776 (emphasis added).

We recognize that this language, read without considering the context, unfortunately suggests that wrongful foreclosure claims are not compulsory counterclaims.  Contextually, however, Reyes-Toledo II arose after we previously held that a lender claiming standing to foreclose based on possession of a note must establish it had possession at the time it filed the foreclosure lawsuit.  See Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361, 369-70, 390 P.3d 1248, 1256-57 (2017) ("Reyes-Toledo I").  The homeowner there had actually filed a wrongful foreclosure counterclaim in response to the foreclosure complaint.  Reyes-Toledo I, 139 Hawai'i at 364, 390 P.3d at 1251. The ICA, however, agreed with the lender that a wrongful foreclosure claim could not be filed until after a foreclosure judgment had entered.  Reyes-Toledo II, 143 Hawai'i at 255, 428 P.3d at 767.

It was in the context of reversing that holding that our opinion included the passage above.  In other words, because we had not previously ruled that, in order to foreclose, a lender must establish possession of the note at the time it filed its foreclosure complaint, we did not want to preclude any such wrongful foreclosure claims that may have been filed in separate

lawsuits.  But, after Reyes-Toledo I, this basis for asserting wrongful foreclosure was known.

In this regard, HRCP Rule 13 (2000) governs compulsory counterclaims, and provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Compulsory counterclaim rules incorporate common law principles of res judicata.  Priceline.com, Inc. v. Director of Taxation, 144 Hawaiʻi 72, 92 n.25, 436 P.3d 1155, 1175 n.25 (2019) (cleaned up).  Res judicata principles protect litigants by relieving parties of the cost and vexation of multiple lawsuits and ensuring finality, thus permitting reliance on adjudication, and serve to conserve judicial resources and prevent inconsistent decisions.  Priceline.com, 144 Hawaiʻi at 85, 436 P.3d at 1168 (cleaned up).  Res judicata limits a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy.  Mortgage Elec.

31

Registration Sys., Inc. v. Wise, 130 Hawaiʻi 11, 17, 304 P.3d 1192, 1198 (2013) (cleaned up). Additionally, res judicata precludes not only the relitigation of claims or defenses that were litigated in a previous lawsuit, but also of all claims and defenses that might have been properly litigated but were not litigated or decided. Wise, 130 Hawaiʻi at 18, 304 P.3d at 1199.

Accordingly, before Reyes-Toledo II, we barred litigants from raising objections like standing and asserting separate claims Truth in Lending Act ("TILA") claims after the final foreclosure judgment had been issued. Wise, 130 Hawaiʻi at 19, 304 P.3d at 1200 (where the petitioners raised respondent's alleged lack of standing as a defense to the foreclosure proceeding, but did not appeal from the final foreclosure judgment, we found that their objections were barred by res judicata). In Eastern Savings Bank, FSB v. Esteban, we ruled that where the defendants did not appeal the court's order foreclosing the property, TILA claims could have been raised in the foreclosure action. 129 Hawaiʻi 154, 162, 296 P.3d 1062, 1070 (2013).

The Domingos' first circuit lawsuit is precisely the kind of repetitive litigation that res judicata principles underlying compulsory counterclaims is intended to prevent. We therefore hold that in addition to their first circuit lawsuit being an improper collateral attack on the foreclosure and confirmation

judgments, the claims they asserted in their first circuit lawsuit were compulsory counterclaims under HRCP Rule 13.

Because Wilmington's foreclosure judgment and their first circuit lawsuit were filed before Reyes-Toledo II, the Domingos cannot claim reliance its language that might have suggested wrongful foreclosure claims are not compulsory counterclaims. According to Wise and Esteban, their first circuit lawsuit was a compulsory counterclaim.

We recognize, however, that it is possible some litigants did not file their wrongful foreclosure claims as compulsory counterclaims based on Reyes-Toledo II. We therefore hold that if a litigant filed a separate wrongful foreclosure lawsuit instead of a counterclaim before entry of a foreclosure judgment after October 9, 2018, when Reyes-Toledo II was originally published, up until the date of this opinion, that separate lawsuit is not subject to dismissal based on the compulsory counterclaim rule. After the date of this opinion, however, the compulsory counterclaim rule applies to wrongful foreclosure claims.

## V.   Conclusion

Based on the reasoning above, we affirm the ICA's December 29, 2023 "Order Dismissing Appeal as Moot by Ginoza, Chief Judge."

Frederick J. Arensmeyer
for petitioner

David B. Rosen
(Christina C. MacLeod,
with him on the briefs)
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Catherine H. Remigio

/s/ Kevin A.K. Souza

